# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20402

United States Court of Appeals
Fifth Circuit

**FILED**
November 14, 2016

Lyle W. Cayce
Clerk

ONEBEACON INSURANCE COMPANY,

Plaintiff – Appellant Cross-Appellee

v.

T. WADE WELCH & ASSOCIATES; T. WADE WELCH,

Defendants – Appellees Cross-Appellants

DISH NETWORK CORPORATION,

Defendant – Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before BENAVIDES, HAYNES and GRAVES, Circuit Judges.

HAYNES, Circuit Judge:

After a jury verdict against it, OneBeacon Insurance Company ("OneBeacon") appeals the judgment, including the district court's denials of OneBeacon's motion for judgment as a matter of law, renewed motion for judgment as a matter of law, and motion for new trial. In addition, T. Wade Welch & Associates (the "Welch Firm") and T. Wade Welch ("Welch") cross-appeal the district court's denial of its motion for entry of judgment.

Finding no error, we AFFIRM.

No. 15-20402

I.

A.

Since the mid-1990s, the Welch Firm has represented DISH Network Corporation ("DISH") in over 400 different matters. The Welch Firm eventually became DISH's go-to litigation counsel, handling the majority of DISH's litigation, except for patent cases and small-claims cases. In or around 2003, DISH hired the Welch Firm to defend it in a suit brought against DISH by Russian Media Group ("RMG") (the "RMG Litigation") in federal court in Connecticut. Ross Wooten served as the first chair attorney from the Welch Firm on the case.

In 2005, RMG served discovery on DISH. Wooten did not respond to RMG's discovery requests within the time limit, believing that he and RMG's counsel, David Golub, had orally agreed to extend the response deadline. Golub later moved to compel Wooten to respond to the pending discovery requests. Wooten did not respond to the motion. On February 23, 2006, the Connecticut district court entered a discovery order (the "discovery order") requiring DISH to respond to all of RMG's requests by March 16, 2006.

Wooten responded to RMG's requests for admissions and interrogatories and soon thereafter produced roughly 5,000 pages of documents to RMG. Wooten did not, however, have DISH verify the responses at this time. Further, a number of Wooten's responses to interrogatories promised a later supplement that would identify, by Bates number, applicable documents relevant to the interrogatory. Wooten believed that he had complied with his discovery obligations at that time.

On November 20, 2006, Welch, on behalf of the Welch Firm, completed an application for insurance with Westport Insurance Company ("Westport"). The application asked the following question:

No. 15-20402

> After inquiry of each lawyer, is the Applicant, its predecessor firms or any lawyer proposed for this insurance aware of any fact or circumstance, act, error, omission or personal injury which might be expected to be the basis of a claim or suit for lawyers . . . professional liability?

Welch responded "No." The application also asked, "[i]n the past five years, has any action been taken against any lawyer proposed for this insurance for disbarment, suspension, reprimand, or other disciplinary action?" Welch responded "No." The application also stated, "All claims will be excluded that result from any acts, circumstances or situations known prior to the inception of coverage being applied for, that could reasonably be expected to result in a claim."

On December 20, 2006, Welch represented to OneBeacon that the statements made in the Westport application would be deemed made to OneBeacon and that all statements were true as of December 20, 2006. He also stated that he was "not aware of any claims against the Insured or circumstances, Incidents, disputes or fee problems that may give rise to a claim against the Insured, other than those disclosed in the application."

OneBeacon issued a claims-made[1] malpractice policy to the Welch Firm for December 20, 2006, to December 20, 2007 (the "2006–07 policy"). The 2006–07 policy had a retroactive date of January 4, 1995, for which the Welch Firm paid additional premiums. The retroactive date set the earliest possible date upon which a wrongful act or omission or malpractice could occur and still be covered under the policy, so long as the claim was made and reported during the policy term (subject to the policy's terms and exclusions).

---

[1] "Claims-made" policies are distinct from "occurrence" policies; the latter focus on whether an insured event occurred as specified during the policy period. The former focus on the date that the claim was made against the insured. *Prodigy Commc'ns. Corp. v. Agric. Excess & Surplus Ins. Co.,* 288 S.W.3d 374, 378, 379 n.7 (Tex. 2009).

3

No. 15-20402

The policy excluded certain claims, including, in relevant part:

> A. any **claim** arising out of a **wrongful act** occurring prior to the **policy period** if, prior to the effective date of the first Lawyers' Professional Liability Insurance Policy issued by **us** to the **named insured** and continuously renewed and maintained in effect to the inception of this **policy period**:
>
> > [ . . .]
>
> 2. **you** had a reasonable basis to believe that **you** had committed a **wrongful act**, violated a disciplinary rule, or engaged in professional misconduct; [or]
>
> 3. **you** could foresee that a **claim** would be made against you . . . .

The policy defined wrongful act as "any actual or alleged act, error, omission or breach of duty arising out of the rendering or the failure to render professional legal services." The definition included "personal injury arising out of [the insured's] conduct relating to the delivery of professional legal services."

Two months after the effective date of the 2006–07 policy, Golub filed a motion seeking sanctions (the "Sanctions Motion") for Wooten's failure to comply with the court's February 2006 discovery order, citing his "blatant failure to respond fully and properly to [RMG's] discovery requests." Golub identified three deficiencies in Wooten's discovery responses: his failure to provide verifications, Bates number references to documents that responded to certain interrogatories, and certain categories of additional documents. He requested "death penalty" sanctions against DISH, which would deem RMG's three primary claims established and preclude DISH from challenging RMG's damages evidence.

Wooten later testified that at this point he still believed he could work the discovery dispute out and avoid sanctions. Indeed, there was evidence presented at trial that had Wooten addressed the deficiencies or attempted to

4

resolve the dispute with Golub, he might have avoided sanctions altogether and would have avoided severe sanctions: Golub testified that death penalty sanctions were "unheard of in Connecticut" and that he believed "there was never going to be sanctions issued here." The magistrate judge held a hearing on the motion for sanctions on July 12, 2007, and the same day, entered an order granting RMG's motion for death penalty sanctions (the "Sanctions Order"). Wooten did not tell DISH or the Welch Firm about the Sanctions Order.

On December 6, 2007, Welch completed a renewal application for malpractice insurance with OneBeacon, this time using OneBeacon's application form. The application asked:

> Have you or any member of your firm ever been disbarred, refused admission to practice law, suspended, reprimanded, sanctioned, fined, placed on probation, held in contempt or the subject of any disciplinary complaint, grievance or action by any court, administrative agency or regulatory body?
>
> [ . . . ]
>
> Are you or any members or employees of your firm aware of any fact, circumstance, or situation which might reasonably be expected to give rise to a claim?

Welch answered "No" to both questions. OneBeacon renewed the policy for the period December 20, 2007, through December 20, 2008 (the "2007–08 policy"). The 2007–08 policy had the same prior-knowledge exclusion as the 2006–07 policy.

Wooten filed objections to the magistrate judge's order, but the district court affirmed the Sanctions Order in February 2008. Welch first learned of the order from another associate at the firm; Welch then informed DISH's general counsel of the order. Welch reached out to Wooten for information regarding the order, but Wooten resigned from the firm. DISH replaced the

5

Welch Firm with another firm in August 2008, which failed to overturn the Sanctions Order.

In April 2008, the Welch Firm advised OneBeacon that DISH had a potential malpractice claim relating to the RMG Litigation.  OneBeacon responded with a reservation of rights and a request to be notified if the Welch Firm received a formal demand from DISH.  On June 4, 2008, the Welch Firm informed OneBeacon that RMG was demanding in excess of $105,800,000 to settle the underlying lawsuit.  OneBeacon began formally treating the matter as a claim at this point but had not yet begun an investigation.  In December 2010, DISH requested that OneBeacon make its policy limits available for a potential settlement with RMG.

OneBeacon later sent Welch an "investigative" reservation-of-rights letter, which was followed by a supplemental reservation-of-rights letter.  The prior-knowledge exclusion was identified as a potential policy defense in the latter letter.  Counsel for the Welch Firm sent OneBeacon a report concluding that DISH's claim against the Welch Firm was "a potentially high exposure claim" and that "Wooten clearly committed malpractice."  One estimate of RMG's damages exceeded $25 million.

On June 14, 2011, DISH offered to settle and release the Welch Firm in exchange for OneBeacon's policy limits.  DISH did not offer to release Wooten in this letter.  Counsel for the Welch Firm wrote OneBeacon on June 27, 2011, formally requesting that OneBeacon settle DISH's claims against the Welch Firm for an amount within the Welch Firm's policy limits.  OneBeacon responded on August 5, 2011, declined DISH's settlement offer, and noted that "it [was] uncertain whether any damages were actually caused by [the Welch Firm]."

OneBeacon then rescinded the Welch Firm's insurance policy, and on August 22, 2011, filed the instant suit for declaratory judgment, seeking to

rescind the policy or obtain a declaration that the prior-knowledge exclusion barred coverage. The Welch Firm counterclaimed, asserting violations of the common law *Stowers* duty[2] and the Texas Insurance Code. DISH intervened. Meanwhile, DISH sent a formal arbitration demand to the Welch Firm, and ultimately filed a demand in arbitration.[3]

The parties filed motions for summary judgment in early 2014, including cross-motions for summary judgment with respect to the policy's prior-knowledge exclusion. [4] The trial court held that the prior-knowledge exclusion in the OneBeacon policy could not be read in isolation, without considering the context of the policy as a whole, because to do so would render the policy's retroactive coverage illusory. The district court adopted the Welch Firm's construction of the prior-knowledge exclusion: whether a reasonable attorney with Wooten's subjective knowledge on December 20, 2006, could have reasonably expected his or her acts, errors and omissions to lead to a malpractice claim by DISH. Concluding that whether the claim was foreseeable was an appropriate question for the jury, the court denied the parties' motions for summary judgment. During the pretrial conference, the district court concluded that DISH's June 14 letter to OneBeacon offering to settle the case was a valid *Stowers* demand.

---

[2] Under Texas law, an insurer can be liable for negligently failing to settle a claim within policy limits. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved).

[3] DISH pursued its malpractice claim in arbitration against the Welch Firm in March 2013. The arbitrator found that Wooten had committed malpractice that led to the Sanctions Order; that, but for the order, DISH had viable defenses to the RMG Action; and that DISH suffered roughly $12.5 million in damages as a result of the malpractice. In June 2013, a Texas state court confirmed the arbitration award as a final judgment.

[4] In December 2012, the district court granted the Welch Firm's earlier-filed partial motion for summary judgment as to OneBeacon's duty to defend DISH's malpractice claim.

No. 15-20402

B.

The case was tried to a jury.  After the Welch Firm rested, OneBeacon moved for judgment as a matter of law, which the court denied.  The jury returned a verdict in favor of DISH and the Welch Firm on every question.  Specifically, the jury found that OneBeacon had not shown that a reasonable attorney, given Wooten's knowledge in December 2006, could have reasonably expected his actions to result in a malpractice claim; that OneBeacon had not proved its claim for rescission; that OneBeacon knowingly violated Chapter 541 of the Texas Insurance Code; and that OneBeacon was grossly negligent in violating its *Stowers* duties.  The jury verdict provided for damages to the Welch Firm equal to the malpractice judgment (approximately $12.5 million) plus $8 million in past and future lost profits, $5 million in exemplary damages, and $7.5 million in additional damages for OneBeacon's knowing violation of the Texas Insurance Code.   The district court partially remitted the jury's award, requiring the Welch Firm to elect between the $5 million award for gross negligence and the $7.5 million for the knowing violation of the Texas Insurance Code.  OneBeacon filed a renewed motion for judgment as a matter of law under Rule 50(b) and a motion for new trial under Rule 59.  The district court denied both.

OneBeacon timely appealed, contending that the district court erred in holding that (1) OneBeacon was not entitled to judgment as a matter of law based upon the prior-knowledge exclusion, (2) DISH's June 14, 2011, letter was a valid *Stowers* demand, (3) additional damages were proper under Chapter 541 of the Texas Insurance Code, and (4) there was competent evidence of the Welch Firm's lost profits.  The Welch parties cross-appealed, contending that the district court erred in requiring Welch to elect between the jury's $5 million

8

award for gross negligence and its $7.5 million award for the knowing violation of the Texas Insurance Code.[5]

## II.

Our review of a jury's verdict is "especially deferential." *SMI Owen Steel Co. v. Marsh U.S.A., Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (quoting *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)). We review the denial of a motion for judgment as a matter of law de novo but apply the same legal standard as the district court. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012). A litigant cannot obtain judgment as a matter of law "unless the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Id.* (quoting *Flowers*, 247 F.3d at 235). We also draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that we might regard as more reasonable. *Westlake Petrochems., L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 239 (5th Cir. 2012). "[I]t is the function of the jury as the traditional finder of the facts, and not for the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (quoting *Mosley v. Excel Corp.*, 109 F.3d 1006, 1009 (5th Cir. 1997)).

The jury is "free to choose among reasonable constructions of the evidence." *United States v. Ramos-Cardenas,* 524 F.3d 600, 605 (5th Cir. 2008). Thus, we "cannot reverse a denial of a motion for judgment as a matter of law unless the jury's factual findings are not supported by substantial evidence, or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." *Am. Home Assurance Co. v. United Space All., LLC*, 378 F.3d 482, 488 (5th Cir. 2004). Nevertheless, "[i]n reviewing an award

---

[5] In this diversity case, we have jurisdiction over this appeal from a final judgment under 28 U.S.C. §§ 1291 and 1332.

of damages, we review all issues of law *de novo*." *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999).

Any argument made in a renewed motion for judgment as a matter of law under Rule 50(b) must have been previously made in a motion for judgment as a matter of law under Rule 50(a). *See Unitherm Food Sys., Inc. v. Swift– Eckrich, Inc.*, 546 U.S. 394, 398 n.1 (2006); *see also Flowers*, 247 F.3d at 238 ("If a party fails to move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on an issue at the conclusion of all of the evidence, that party waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal.").

We review a district court's denial of a motion for new trial for an abuse of discretion. *See McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 472 (5th Cir. 2015). "The district court abuses its discretion by denying a new trial only when there is an 'absolute absence of evidence to support the jury's verdict.'" *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013) (quoting *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991)). If the evidence is legally sufficient, we must find that the district court did not abuse its discretion in denying a motion for new trial. *See Cobb v. Rowan Cos., Inc.*, 919 F.2d 1089, 1090 (5th Cir. 1991); *see also Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998) (explaining that it is "far easier" to show a district court should have granted a motion for judgment as a matter of law than it is to show a district court abused its discretion by not granting a new trial).

### III.

### A.

OneBeacon argues that the district court erred in denying its motion and renewed motion for judgment as a matter of law based on the policy's prior-

knowledge exclusion.  Specifically, OneBeacon asserts that the district court incorrectly concluded that the prior-knowledge exclusion, if applied as written, would render the policy's retroactive coverage illusory.  Accordingly, OneBeacon contends the district court also erred in adopting the Welch Firm's proposed interpretation of the prior-knowledge exclusion.[6]

The district court concluded, as a matter of law, that OneBeacon's interpretation of the malpractice policy would render the policy's retroactive coverage illusory.  The district court then turned to the Welch Firm's interpretation of the policy.  The Welch Firm urged the court to read the prior-knowledge exclusion in conjunction with the required disclosures in the 2007 policy application and to construe the exclusion to apply only to a claim arising out of a wrongful act that the insured could reasonably foresee would result in a claim.  The district court accepted this construction.

The district court could not apply the literal policy language because of the extreme overbreadth of the wrongful act definition used in the exclusion: "any actual or alleged act, error, omission or breach of duty arising out of the rendering or the failure to render professional legal services."  On its face, this covers every single thing an attorney does or does not do, wrongful or not.  As written, then, the exclusion renders the coverage illusory and is facially

---

[6] As a preliminary matter, we reject DISH's contention that OneBeacon is barred from challenging the district court's denial of its motion for judgment as a matter of law because OneBeacon failed to include them in its Rule 50(a) motion.  *See Unitherm*, 546 U.S. at 398 n.1.  Although OneBeacon's arguments regarding the prior-knowledge exclusion were considerably more extensive in its Rule 50(b) motion, the exclusion is also mentioned in its Rule 50(a) motion, which stated that the district court should rule that the exclusion applies "as a matter of law."  The Rule 50(a) motion also referenced the more fulsome discussion of the exclusion engendered by OneBeacon's prior summary judgment motion, which the district court denied in an order adopting its supposedly flawed construction of the policy.  In any event, OneBeacon's arguments on prior knowledge do not turn on sufficiency of the evidence—they turn solely on policy interpretation, a question of law that was litigated throughout the district court proceedings.  Therefore, we apply de novo review here.  *Baisden*, 693 F.3d at 498.

absurd.   Indeed, OneBeacon concedes that the exclusion requires some modification, it simply disagrees with the district court's approach.[7]

The exclusion in the context of this policy must be directed at a "wrongful act" reasonably likely to lead to a malpractice claim.   Under the undisputed facts of this case, at the relevant time of December 20, 2006, the evidence supports the conclusion that Wooten's "wrongful acts," had they been rectified, would not have resulted in the sanctions that ensued and, thus, would not have supported the kind of recovery that the policy insured against (recovery for malpractice).   At this point, he was merely under an order to provide discovery.   Such discovery orders are lamentably par for the course in litigation and even Wooten's opponent, Golub, agreed that had Wooten complied before Golub filed the motion in February 2007, death penalty sanctions, which were very rare, would not have resulted.   Wooten would not receive the motion seeking or the order granting Golub's request for death penalty sanctions from the magistrate judge until February and July 2007, respectively.   Furthermore, evidence was presented that Wooten could likely have cured his mistake almost until the date of the magistrate court's July 2007 hearing.   In the face of this evidence, OneBeacon, which bears the burden of proving an exclusion applies, cannot prevail as a matter of law on a contrary view.   *Crose v. Humana Ins. Co.*, 823 F.3d 344, 348 (5th Cir. 2016).

For these reasons, we affirm the district court's orders denying OneBeacon's motion and renewed motion for judgment as a matter of law based on the policy's prior-knowledge exclusion.

---

[7] OneBeacon never sought a jury question on its own version of the "prior-knowledge" exclusion, thus its only basis to prevail here is if it is correct that the exclusion applies as a matter of law, assuming all facts and inferences in Welch's favor.

No. 15-20402

B.

OneBeacon next challenges the district court's ruling that DISH's June 14, 2011, letter offering to settle its claims against the Welch Firm in exchange for a settlement within policy limits was a valid *Stowers* demand. Specifically, OneBeacon contends the letter was not a valid *Stowers* demand because it did not offer to release Wooten, who was also an insured under the policy.

Under *Stowers*, in certain circumstances, insurers may be liable for negligently failing to settle within policy limits claims made against their insureds. *Tex. Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 314–15 (Tex. 1994); *G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved). The *Stowers* duty is activated by a settlement demand when "three prerequisites are met: (1) the claim against the insured is within the scope of coverage, (2) the demand is within the policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 849 (Tex. 1994). The demand must also offer to release fully the insured in exchange for a sum equal to or less than the policy limits. *Id.* at 848–49.

OneBeacon argues that to be a "true" *Stowers* demand, the offer to settle must offer to release all insureds (here the Welch Firm and Wooten). The Texas Supreme Court has not spoken directly on this issue. However, we have. In *Travelers Indemnity Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 764 (5th Cir. 1999), we held that, when faced with a settlement demand over a policy with multiple insureds, an insurer fulfilling its *Stowers* duty "is free to settle suits against one of its insureds without being hindered by potential liability

13

to co-insured parties who have not yet been sued."[8]   In coming to this conclusion, we were persuaded by the Texas Supreme Court's decision in *Soriano*.  *Citgo*, 166 F.3d at 765 (citing *Soriano*, 881 S.W.2d at 314–16).[9]

Instead of following *Citgo*, OneBeacon urges us to follow a recent Texas appellate decision in which the court found no valid *Stowers* demand where only the insured employer and not the employee (an additional insured) would have been released.  *Patterson v. Home State Cty. Mut. Ins. Co.*, No. 01-12-00365-CV, 2014 WL 1676931, at *10 (Tex. App.—Houston [1st Dist.] Apr. 24, 2014, pet. denied) (mem. op.).[10]   However, in that case, the insured employer had explicitly indicated to its attorney that it "did not want 'any settlement

---

[8] *See also H.R. Mgmt. Co. v. Zurich Ins. Co.*, 137 F.3d 1350, 1998 WL 92301, at *3 (5th Cir. 1998) (not designated for publication) (stating that "under Texas law," an insurer "had to settle" with certain co-insured's claimants "as long as the settlement fit the *American Physicians* criteria.").

[9] In *Soriano*, an insured named Soriano negligently crashed into and killed Medina, as well as Soriano's own passenger, Lopez.  881 S.W.2d at 313.  The driver was insured by Farmers for $20,000.  *Id.*  Upon receipt of a settlement offer from the Lopez family, Farmers settled with them for $5,000 and offered the remaining $15,000 to the Medina family.  *Id.* The Medinas rejected the offer and demanded the original policy limit of $20,000.  *Id.*  The Texas Supreme Court ultimately rejected the argument that Farmers violated its *Stowers* obligation by settling the claim with the Lopez family for $5,000 and thereby reducing the amount available for a settlement with the Medinas.  *Id.* at 314–17.  The Supreme Court "conclude[d] that when faced with a settlement demand arising out of multiple claims and inadequate proceeds, an insurer may enter into a reasonable settlement with one of the several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims." *Id.*
Like in *Citgo*, the instant situation differs from the facts of *Soriano* in that here, OneBeacon faced multiple insureds rather than a claimant and an insured.  In *Citgo*, we rejected the same argument OneBeacon makes here to distinguish *Soriano* that "an insurer owes a higher duty to its insured than it does to claimants."  *Citgo*, 166 F.3d at 765-68.

[10] We are not bound by decisions from Texas courts of appeals.  *See Rogers v. Corrosion Prods., Inc.*, 42 F.3d 292, 295 (5th Cir. 1995) ("The decisions of lower courts should be given some weight, but they are not controlling where the highest state court has not spoken on the subject."). "To determine Texas law, we look to the decisions of the state's highest court, or in the absence of a final decision by that court on the issue under consideration, we 'must determine . . . how the state's highest court would resolve the issue if presented with it.'" *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011) (quoting *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010)).

demands to be accepted that didn't involve a release of all of the claims against both [the employer and the employee.]'" *Id.* We conclude that the district court did not err in holding that DISH's July 14, 2011, letter demanding policy limits in exchange for a full release of its claims against the Welch Firm was a valid *Stowers* demand which OneBeacon rejected.

### C.

Next, OneBeacon challenges the jury's award of additional damages on the ground that OneBeacon "knowingly" violated Section 541.060 of the Texas Insurance Code, contending that the district court erred in permitting this issue to go to the jury.

Chapter 541 of the Texas Insurance Code forbids an insurer from "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear." TEX. INS. CODE § 541.060(a)(2)(A). To have acted "knowingly," OneBeacon must have acted with actual awareness of the falsity, unfairness, or deceptiveness of the act that made it liable under Chapter 541. *See St. Paul Surplus Lines Ins. Co., Inc. v. Dal-Worth Tank Co., Inc.*, 974 S.W.2d 51, 54 (Tex. 1998). "'Actual awareness' does not mean merely that a person knows what he is doing; rather, it means that a person knows that what he is doing is false, deceptive, or unfair. In other words, a person must think to himself at some point, 'Yes, I know this is false, deceptive, or unfair to him, but I'm going to do it anyway.'" *Id.* at 54–55.

OneBeacon contends that it declined to settle the DISH claim because it believed that the prior-knowledge exclusion in the policy precluded coverage for the loss resulting from Wooten's malpractice. To the extent it was wrong about coverage, OneBeacon argues that its mistake was reasonable because even the district court concluded that the (patently overbroad) prior-knowledge exclusion, as written, would preclude coverage.

However, the Welch Firm points to contradictory evidence supporting the jury's finding. For example, OneBeacon's contemporaneous written explanation for its rejection of DISH's demand, which made no mention of any belief that OneBeacon had valid coverage defenses, belies OneBeacon's current argument that it relied on the prior-knowledge exclusion. Furthermore, DISH's expert testified that OneBeacon's conduct was not that of a reasonable insurer acting prudently, but was an instance of prohibited "post-claim" underwriting, which he defined as occurring when "the insurance company realizes that they have a problem, and they desperately look for a way to avoid paying the claim. And what they'll do is they'll try to search for a morsel of evidence that they can conceivably turn into a material misrepresentation, such as we have here."

Although OneBeacon can point to evidence that it believed it had coverage defenses in order to rebut the suggestion that OneBeacon knowingly engaged in false, deceptive, or unfair practices, the jury was free to disregard that evidence and credit the testimony of DISH's expert. The evidence does not point so strongly and overwhelmingly in OneBeacon's favor that reasonable jurors could not have reached a different conclusion. *See Flowers*, 247 F.3d at 235. Accordingly, the district court did not err in entering judgment on the jury's award of additional damages on the ground that OneBeacon "knowingly" violated Section 541.060 of the Texas Insurance Code.

### D.

OneBeacon next challenges the jury's award of $8 million in past and future lost profits to the Welch Firm. Specifically, OneBeacon argues that there was no competent evidence for the jury to come to this conclusion.

In its Rule 50(b) motion, OneBeacon moved for renewed judgment as a matter of law on the Welch Firm's lost profits claim. As to this claim, however, OneBeacon did not move for judgment as a matter of law before the jury's

verdict in its Rule 50(a) motion. We have held that a party cannot "renew" a motion it never made. *In re Isbell Records Inc.*, 774 F.3d 859, 868–69 (5th Cir. 2014); *Flowers*, 247 F.3d at 238 ("If a party fails to move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on an issue at the conclusion of all of the evidence, that party waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal.").[11] We have also held that we lack power to address a claim not properly raised in a Rule 50(b) motion. *See McClendon v. Big Lots Stores*, 749 F.3d 373, 374–75 (5th Cir. 2014) (not designated for publication) (collecting cases concerning the failure to make a Rule 50(b) motion on a ground raised in a Rule 50(a) motion and concluding that a failure to make a proper Rule 50(b) motion precludes review on appeal). Thus, we conclude that this issue is not properly before us.[12]

## E.

In its cross-appeal, the Welch Firm challenges the district court's denial of its motion for entry of judgment for failing to include the jury's award for exemplary damages based on gross negligence in the final judgment. At the

---

[11] The Welch Firm objected to the "renewed" motion on this ground, so it did not forfeit this point. *See Decorte v. Jordan*, 497 F.3d 433, 438 (5th Cir. 2007) (noting that a litigant must raise in the district court its opponent's failure to link a Rule 50(b) motion to arguments raised in an earlier Rule 50(a) motion).

[12] Even if we were to apply plain error review as urged by OneBeacon, we would conclude that the challenge fails. OneBeacon argues that the Welch Firm failed to prove causation of lost profits "with reasonable certainty." However, the "reasonable certainty" standard under Texas law of lost profits deals with the amount of damages, not causation. *Texas Instruments v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994) (recovery of lost profits is allowed where loss of profits is the "natural and probable consequences of the act or omission complained of;" however, "the amount of the loss must be shown by competent evidence with reasonable certainty." (citations omitted)). OneBeacon argues that DISH would not have continued to use the Welch Firm regardless of OneBeacon's actions on the *Stowers* demand. There was evidence to the contrary, and the amount of lost profits was shown with reasonable certainty. OneBeacon's argument would thus fail under plain error review.

conclusion of trial, the jury rendered a finding that OneBeacon committed a violation of Chapter 541 knowing that its conduct was false, deceptive, and unfair.  It also found that OneBeacon's refusal to settle DISH's malpractice claim against the Welch Firm constituted "gross negligence."  The jury assessed damages for each of these violations separately, finding $7.5 million in additional damages for "knowingly" violating Chapter 541 and $5 million in common law exemplary damages for the grossly negligent *Stowers* violation. The district court held that it could include only one of the two awards in the final judgment, because "both claims related to essentially the same series of actions and the ultimate refusal to settle."

Under the one satisfaction rule, Texas law limits recovery to one satisfaction per injury.  *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991), *modified on other grounds in Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006).  Therefore, Texas law may force plaintiffs to elect the recovery they prefer if they receive a jury verdict with more than one assessment of damages.  *Kish v. Van Note*, 692 S.W.2d 463, 467–68 (Tex. 1985). However, when "awards of additional damages and punitive damages [are] based upon separate jury findings and upon different acts," a plaintiff may be entitled to both such damages.  *Berry Prop. Mgmt., Inc. v. Bliskey*, 850 S.W.2d 644, 665–66 (Tex. App.—Corpus Christi 1993, writ dism'd by agr.); *see also Tompkins v. Cyr*, 202 F.3d 770, 787 n.11 (5th Cir. 2000); *Birchfield v. Texarkana Mem'l Hospital*, 747 S.W.2d 361, 367 (Tex. 1987) (holding that separate awards of exemplary damages require that the verdict include "separate and distinct findings of actual damages").

*Berry* elucidates this distinction.  In *Berry*, Juli Bliskey lived in a townhome managed by Berry Property Management Incorporated ("Berry"). 850 S.W.2d at 651.  An intruder broke into her apartment while she was asleep, using a key to her unit.  *Id.*  The intruder sexually assaulted Bliskey.  *Id.*  She

sued Berry, asserting a negligence claim and a claim under the Texas Deceptive Trade Practices Act ("DTPA"). *Id.* Each claim was based on a different act by Berry: the negligence claim was based on lacking safety procedures, which allowed the intruder to obtain a copy of Bliskey's key, whereas the DTPA claim was based on Berry's failure to provide Bliskey with a statutorily-required night latch for her door. *Id.* at 654, 658. The jury awarded Bliskey compensatory damages resulting from Berry's negligence and from Berry's deceptive conduct under the DTPA. *Id.* at 664. In addition, it awarded Bliskey common law exemplary damages, as well as additional DTPA damages. *Id.*

The court of appeals determined that the one satisfaction rule applied and allowed Bliskey to receive only one recovery for her compensatory damages because she only suffered one injury. *Id.* at 666. However, because "Berry engaged in two different acts" the court of appeals held that "the trial court did not err in awarding Bliskey both common law exemplary damages and statutory additional damages." *Id.* at 665.

The Welch Firm argues that, like in *Berry,* the jury found that OneBeacon violated two claims—Chapter 541 and the common law *Stowers* doctrine—such that it is entitled to the separate jury awards of both additional and exemplary damages. In support, the Welch Firm argues each claim entails distinct forms of culpability and injury.

The Welch Firm's attempts to distinguish the causes of action and their damage amounts are unavailing. The Texas Supreme Court has held that a party bringing a claim under Chapter 541 premised on the failure to settle must meet the requirements of a *Stowers* claim. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.,* 77 S.W.3d 253, 260–62 (Tex. 2002). Not only do "the two causes of action have certain overlapping elements," as the Welch Firm admits, but also the causes of action are also almost identical. Accepting the Welch Firm's

understanding of the law, therefore, would allow for separate additional and exemplary damage assessments based on claims that almost always involve identical acts. Furthermore, many of the Welch Firm's arguments attempt to distinguish the claims and the jury's findings. But *Berry* requires that the awards be "based upon separate jury findings *and* upon different acts," and the Welch Firm failed to show that OneBeacon's acts under each claim were materially different. 850 S.W.2d at 665–66 (emphasis added). As the district court aptly stated, "[w]hile the jury may have considered some of OneBeacon's actions in handling the settlement decision more when assessing the common law *Stowers* claim than in assessing the additional damages claim under Chapter 541, both claims related to essentially the same series of actions and the ultimate refusal to settle." Therefore, the district court did not err in requiring the Welch Firm to choose between additional damages under Chapter 541 and exemplary damages under *Stowers*.

AFFIRMED.