# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-50330

———————

United States Court of Appeals
Fifth Circuit

**FILED**

April 25, 2024

Lyle W. Cayce
Clerk

Good River Farms, L.P.,

*Plaintiff—Appellee*,

*versus*

TXI Operations, L.P.; Martin Marietta Materials, Incorporated,

*Defendants—Appellants*.

———————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-1117

———————————————————

Before Smith, Haynes, and Douglas, *Circuit Judges*.

Dana M. Douglas, *Circuit Judge*:

This appeal follows a "120-year flood" event that occurred near Austin, Texas, on October 30, 2015. The disputing parties own land directly across from each other along the Colorado River. Plaintiff-Appellee Good River Farms ("Good River") sustained severe damage to its pecan farm and subsequently sued Defendants-Appellants Martin Marietta Materials and TXI Operations (collectively "Martin Marietta"), who utilize the land for strip mining. Good River claimed that the mining resulted in the presence of a large pit filled with groundwater that breached and released a deluge of

impounded surface water onto their property.  Following a jury trial, Good River was awarded $659,882.00 in damages, prevailing on claims for violations of Texas Water Code § 11.086 and for negligence.  Martin Marietta appealed.  Mindful of our deferential review of jury verdicts and the unique factual scenario present in this case, we AFFIRM.

## I

Good River operates a pecan farm on the north side of the Colorado River.  In 2015, Good River's property covered 377 acres and included 8,000 pecan trees, as well as several buildings where equipment and harvested pecans could be processed and stored.  Martin Marietta operates a sand and gravel mine on the south side of the Colorado River, directly across from Good River's pecan farm.  Martin Marietta's operation includes the presence of a large freshwater pit near the river, directly across from Good River.

Parts of Good River's pecan farm are in a 100-year floodplain.  In the past, Good River experienced flooding in 1992 and 2013, although no damage occurred on the property.  However, on Martin Marietta's property, the 2013 flooding caused two breaches on the west and east sides of the north end of the freshwater pit.  In early 2015, Dennis Schiwitz, Martin Marietta's Equipment Operator, repaired the west breach of the pit but failed to repair the east breach until 2017.  In 2015, the conditions outside Austin led to a "120-year flood" event.  Both parties' properties flooded, with Martin Marietta's facilities covered by up to three feet of water.

Testimony elicited at trial indicated that water overflowed the north wall of Martin Marietta's freshwater pit and ran perpendicular to the current of the Colorado River to reach Good River's property.  For example, S. Turner Wimberly, manager and part owner of Good River, testified that he had been present at the property one or two days before the flood.  He stated

that immediately prior to October 30, Martin Marietta's southern embankment "had piled dirt really high" and looking across from Good River's property, none of Martin Marietta's property behind the embankment could be seen. He further testified that when surveying the water damage the next morning, he discovered objects from within his business' buildings scattered across the property and a significant amount of sand and gravel strewn throughout. Mr. Wimberly also testified that Martin Marietta's embankment looked visibly different on October 31, 2015, and that portions of its property could now be seen.

Antonio Garcia Guerrero testified that he had worked on the Good River property for 17 years and had seen the property flood in 2013 and 2015. On October 30, he arrived at the property at 10:30 or 11:00 a.m., after it had stopped raining, and noted that the Colorado River looked normal at that time. He noticed the water level rising in the Colorado River around 3:00 p.m. He identified that at 3:30 p.m., the level of the river was higher, but that water did not come onto the farm until around 6:00 p.m. He testified that after this time, the level of the water on the farm began rising quickly, and that emergency services arrived to rescue his coworker and his son around 7:00 p.m., requiring boats to do so. He corroborated Mr. Wimberly's testimony that more of Martin Marietta's property was visible the day after the flood. Guerrero also testified that the water flowing onto Good River's property flowed northward, rather than in the normal eastward flow of the Colorado River.

Jorge Lopez Tapia testified that he had worked at the Good River property for more than 20 years and had seen flooding in 1992, 2013, and 2015, although the first two flood incidents caused no damage. On October 30, the Colorado River was normal, and its water level was not rising at 10:30 to 11:00 a.m., but had begun rising at around 3:00 or 3:30 p.m., when he began monitoring the river for rising water. Like Guerrero, Tapia noted that water

began rising faster around 6:00 p.m. and that it was around 6:00 to 6:30 p.m. that water began rising onto Good River's property. He testified that he could see water coming over the dirt embankment on Martin Marietta's property, with the flow of water quickly increasing until it was up to his chest. Like the other witnesses, Tapia indicated that no flowing water remained on Good River's property by the next day.

Jon McIntyre, Good River's expert, who reviewed river and stream flow and rainfall data for October 30 concurred with Martin Marietta's expert that modeling showed peak water flow in the Colorado River at the Good River property would have occurred around 5:00 p.m.

Finally, Dennis Schiwitz, a heavy equipment operator at Martin Marietta, testified that when he arrived to work on October 30, it was not raining, but that water began rising at the Martin Marietta property around 7:00 a.m., and the property was evacuated by 3:00 p.m. because there was three feet of water at the onsite office. He noted that the rise in water on October 30 was the most rapid he had seen at the Martin Marietta property.

On October 27, 2017, Good River filed its petition for permanent injunction and exemplary damages in Texas state court, asserting claims for nuisance, negligence, negligence per se, and violation of Texas Water Code § 11.086. On November 27, 2017, Martin Marietta timely removed the case to federal court based on diversity jurisdiction.

The case proceeded to a jury trial on August 22, 2022. After Good River rested its case-in-chief, Martin Marietta presented its Rule 50(a) Motion for Judgment as a Matter of Law orally and in a written motion. When the Rule 50(a) arguments concluded, the trial court said "I think this is, frankly, a close case, but I'm going to reserve judgment. I'm going to let this go to the jury without prejudice for you to re-urg[e] this in light of whatever the jury is going to do with this."

Three of Good River's original claims were submitted to the jury: nuisance, Texas Water Code § 11.086, and negligence. The jury rejected Good River's nuisance claims. The jury answered "yes," to the questions whether "Defendants diverted or impounded the natural flow of surface waters in a manner that proximately caused damage to Plaintiff's property" (under Texas Water Code § 11.086) and whether Defendants' "negligence . . . proximately cause[d] the injury to Plaintiff's property on or around October 30, 2015." The trial court entered final judgment on that verdict on August 24, 2022, awarding Good River $659,882.00 in damages and denying all other relief.

Martin Marietta filed its renewed motion for judgment as a matter of law under Rule 50(b). The trial court denied the motion on April 11, 2023. *Good River Farm, LP v. Martin Marietta Materials, Inc.*, No. 1:17-CV-1117-RP, 2023 WL 2904577 (W.D. Tex. Apr. 11, 2023). On May 5, 2023, Martin Marietta timely filed its notice of appeal from the trial court's final judgment and its order denying its renewed motion for judgment as a matter of law. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

"A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) (quoting *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008)). We "review de novo the district court's denial of a motion for judgment as a matter of law, applying the same standard as the district court." *Carley v. Crest Pumping Techs., LLC*, 890 F.3d 575, 578 (5th Cir. 2018) (quoting *Heck v. Triche*, 775 F.3d 265, 272 (5th Cir. 2014)). Under Rule 50(b), "[a] motion for judgment as a matter of law should be granted if there is no legally

sufficient evidentiary basis for a reasonable jury to find for a party." *Orozco*, 757 F.3d at 448.

At this stage, a court's review of a jury verdict is "especially deferential." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 675 (5th Cir. 2016) (quoting *SMI Owen Steel Co.*, 520 F.3d at 437)). We "view the entire record in the light most favorable to the non-movant, drawing all factual inferences in favor of the non-moving party, and 'leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury.'" *Aetna Casualty & Surety Co. v. Pendleton Detectives of Miss., Inc.*, 182 F.3d 376, 378 (5th Cir. 1999) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994)). A motion for judgment as a matter of law may be granted "[o]nly when the facts and reasonable inferences are such that a reasonable juror could not reach a contrary verdict." *Baltazor v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998). "If reasonable persons could differ in their interpretation of the evidence, the motion should be denied." *Id.*

## III

### A. Texas Water Code § 11.086

Martin Marietta argues that as a matter of law, it cannot be liable under § 11.086 because that statute applies only to damage caused by "surface water" diverted or impounded by the defendant, and there was not legally sufficient evidence that "surface water" from Martin Marietta's property crossed the Colorado River to flood Good River's property on the other side. Instead, it argues that because the Colorado River flows between the properties, the water ceased being surface water when it reached the river and became flood water. Because Good River "did not establish that the water that flooded its pecan orchard was 'surface water' from Martin

Marietta's operation," Martin Marietta argues it is entitled to judgment as a matter of law.

Good River counters that "[m]uch of Appellants' argument can be summarized as claiming that once water touched the channel of the Colorado River no further liability could attach because the water instantly became state controlled floodwater." It points to evidence showing that the water that came onto Good River's property did not follow a defined course and had not gathered into or formed a natural body of water, "but rather flowed across and overwhelmed the riverine current" pointing to support from the expert modeling and eyewitness testimony.

Texas Water Code § 11.086 states, "No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded." Tex. Water Code Ann. § 11.086(a). It further states, "A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow." *Id.* § 11.086(b).

The term "surface water" is not defined in the statute but has been interpreted by Texas courts to mean water "which is defused over the ground from falling rains or melting snows, and continues to be such until it reaches some bed or channel in which water is accustomed to flow." *Dalon v. City of DeSoto*, 852 S.W.2d 530, 538 (Tex. App.—Dallas 1992, writ denied). "Surface waters do not follow a defined course or channel and do not gather into or form a natural body of water." *Id.* "The chief characteristic of surface water is its inability to maintain its identity and existence as a body of water, distinguishing it from water flowing in a natural watercourse." *Id.* Damages are permitted under § 11.086 when "(1) a diversion or impoundment of

surface water, (2) causes, (3) damage to the property of the plaintiff landowner." *Dietrich v. Goodman*, 123 S.W.3d 413, 417 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (emphasis omitted).

Texas courts have denied liability where the defendant diverted or impounded a watercourse or floodwater, rather than surface water. A watercourse is defined as having "(1) a bank and bed, (2) a current of water, and (3) a permanent source of supply." *Dietrich*, 123 S.W.3d at 418 (quoting *Hoefs v. Short*, 273 S.W. 785, 787 (Tex. 1925)). Floodwaters "are those which, generally speaking, have overflowed a river, stream or natural water course and have formed a continuous body with the water flowing in the ordinary channel." *Valley Forge Ins. Co. v. Hicks Thomas & Lilienstern, LLP*, 174 S.W.3d 254, 258 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (quoting *Sun Underwriters Ins. Co. v. Bunkley*, 233 S.W.2d 153, 155 (Tex. App.—Fort Worth 1950, writ ref'd)).

Texas courts have also held that "surface water" may change in character once it comes "under the control and direction of a watercourse." *Dietrich*, 123 S.W.3d at 420; *Dalon*, 852 S.W.2d at 538-39 ("[I]f the floodwater forms a continuous body with the water flowing in the ordinary channel, or if it temporarily overflows presently to return, as by recession of the waters, it is to be regarded as still a part of the stream") (internal citation omitted).

The plain language of the statute does not require that the water which damages the property of another be purely surface water. Instead, the statute asks whether the defendant's conduct diverted or impounded surface water in a way that causes damage to another when that water overflows. *See* Tex. Water Code Ann. § 11.086(a). Martin Marietta's insistence that the damage be caused entirely from surface water appears to read a requirement into the statute that does not exist. The Texas Supreme Court instructs not

to read requirements into a statute that do not appear to exist under the plain language. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) ("[W]hen possible, we discern [legislative intent] from the plain meaning of the words chosen.").

Despite this, Martin Marietta raises a strong argument rooted in Texas appellate court cases. The definitions provided for surface water by Texas appellate courts suggest that surface water continues to be such "until it reaches some bed or channel in which water is accustomed to flow." *Dalon*, 852 S.W.2d at 538. Here, the surface water from Martin Marietta's property necessarily had to cross the Colorado River to reach Good River's property. But *Dalon* also states that "[s]urface waters do not follow a defined course or channel and does not gather into or form a natural body of water." *Id.* at 538. According to the witnesses, the current of water on the Good River property was moving south to north, instead of west to east like the Colorado River, suggesting it did not "follow a defined course or channel" or "gather into or form a natural body of water." *See id.* This, among other reasons, makes the cited cases distinguishable.

For example, in both *Dalon* and *Dietrich*, the courts discussed whether defendants had manipulated surface or floodwaters, and ultimately concluded that the defendants' actions impounded only water that had already become floodwater prior to the impoundment. *Dalon*, 852 S.W.2d at 539 (concluding that the overflowed creek is a natural waterway, and once rainfall enters the creek it is no longer surface water and cannot give rise to liability under § 11.086); *Dietrich*, 123 S.W.3d at 419-20 (concluding that the water flowed downstream in a well-defined bed was not surface water when impounded). Here, Martin Marietta does not argue that it impounded floodwater, but only that impounded surface water transformed into floodwater when it reached the Colorado River. It does not dispute that the water in its freshwater pit was surface water.

In the additional cases cited, such as *Bonin v. Sabine River Authority of Texas*, the district court concluded that plaintiffs could not recover because they did not "include any facts in the operative complaint to even remotely suggest that the waters which damaged their properties were surface waters." *Bonin v. Sabine River Auth. of Tex.*, No. 1:17-CV-00134-TH, 2019 WL 1246259, at \*6-7 (E.D. Tex. Mar. 1, 2019), *report and rec. adopted*, No. 1:17-CV-00134-TH, 2019 WL 1244705 (E.D. Tex. Mar. 18, 2019), *aff'd*, 961 F.3d 381 (5th Cir. 2020). The surface water flowed into the Sabine River and the damage occurred *downstream*, so the surface water had been flowing in the natural channel and transitioned to floodwater. *Id.* Likewise, *Salazar v. Sanders* denied liability for downstream flooding. 440 S.W.3d 863, 873 (Tex. App.—El Paso 2013, pet. denied). Here, Good River alleged facts that surface waters damaged its property and do not indicate that any water flowed downstream. Instead, the water ran perpendicular to the river to cross it onto Good River's property.

As Good River notes, in most of these Texas appellate decisions, the water had been traveling in a natural watercourse *before* the defendant diverted it. It notes that unlike the cited cases, "surface water detained by Appellants did not enter the stream and flow down the course of the river, but rather crossed over the normal flow of the river and did not become a part of the natural watercourse." Because of this, the case presents a unique set of factual circumstances that have not been previously addressed by any case.

The district court found support for its holding in *Texas Woman's University v. The Methodist Hospital*, 221 S.W.3d 267 (Tex. App.—Houston [1st Dist.] 2006, no pet.). There, the district court denied summary judgment to defendants because it could not show that the damage to plaintiff's property "was flooded exclusively due to a . . . natural watercourse." *Id.* at 280. Importantly, the *Texas Woman's University* court focused on the identity of the water at the time it was diverted—not the

identity of the water when it flooded plaintiff's property. *Id.* at 279-83; *see also Tenaris Bay City Inc. v. Ellisor*, No. 14-22-00013-CV, 2023 WL 5622855, at *8 (Tex. App. —Houston [14th Dist.] 2023) ("[T]he relevant inquiry is whether it was surface water *at the time of diversion*.") (emphasis added).

Martin Marietta concedes that the district court properly instructed the jury on the definition of "surface water." Further, the jury relied on evidence including testimony that Martin Marietta's embankment had significantly decreased, sand and gravel was found strewn about Good River's property, and eyewitness accounts of water surging from Martin Marietta's pit across the Colorado River inundated Good River's property. As noted by Good River, the waters that flooded its property were not a "continuous body of water flowing in the ordinary channel." Instead, as noted by witnesses, "the river was flowing from West to East, while the waters that entered Good River's property were flowing from South to North." The jury apparently concluded that the water was not overflow from the river, but surface water accumulated in such quantity that it ran contrary to the riverine flow. A motion for judgment as a matter of law may be granted "[o]nly when the facts and the reasonable inferences are such that a reasonable juror could not reach a contrary verdict." *Baltazor*, 162 F.3d at 373. Here, "reasonable persons could differ in their interpretation of the evidence," and accordingly, the district court properly denied the Rule 50(b) motion for judgment as a matter of law and the jury verdict should be affirmed. *Id.*

## B. Negligence

Turning to the jury's finding of negligence, Martin Marietta argues that Good River did not adduce legally sufficient evidence that the flooding of its pecan farm was proximately caused by the negligence of Martin Marietta, nor that it owed an independent duty to control floodwater. It also

argues that negligence cannot be established when the defendant does no more than furnish a condition which makes a plaintiff's injuries possible.

Good River argues that its injuries are proximately traceable to the actions of Martin Marietta in diverting and impounding surface water. It contends that Martin Marietta had a duty to control accumulated surface water and a general duty of care arising from the parties' particular circumstances, particularly where Martin Marietta knew there would be a risk of flood because its embankments had breached during a prior flood in 2013 and were not fully repaired prior to the 2015 flood. As to proximate cause, Good River points out that direct witness testimony established significant impoundment of surface waters occurring on Martin Marietta's site before Good River's property suffered any intrusion of water, and that witnesses testified that Martin Marietta's embankment was constructed of loose sediment without meaningful engineering. Finally, Good River notes that Martin Marietta did more than merely furnish a condition because evidence showed a direct, causal connection between Martin Marietta's activities in modifying and utilizing its site, and the fact that the Colorado River was already subsiding at the time the deluge engulfed Good River's property.

Negligence requires showing that a legal duty is owed to a plaintiff, breach of that duty, and that damages were proximately caused by that breach. *See, e.g., Nabors Drillings, USA, Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009). The parties do not dispute that the State of Texas has a non-delegable duty to control *flood*waters. *TWU*, 221 S.E.3d at 278. A private defendant cannot be held liable for failing to control floodwaters because Texas and Texas alone possesses that duty. *Id.* Martin Marietta's theory here is similar to its theory regarding Texas Water Code § 11.086: its duty to control surface water ended when the surface water mixed with the Colorado River floodwater before flowing onto Good River's farm. But the jury, when

given the elements for negligence, found that it was foreseeable that surface water accumulating in Martin Marietta's pit would have overflowed and resulted in a deluge on Good River's property. Regardless of whether Martin Marietta had no duty to control floodwaters, it had a duty to control the surface water impounded on its property. The jury could reasonably conclude that it was foreseeable that surface water would gather in such large quantities that when it overflows, it could flood surrounding land.

As to proximate cause, the jury heard evidence that the Colorado River's flooding peaked well before Good River was flooded and that eyewitnesses saw the water crest over Martin Marietta's property and head toward Good River's farm. Concluding that Martin Marietta proximately caused Good River's injury was reasonable given the evidence. And we must "leav[e] credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury." *Aetna Casualty & Surety Co.*, 182 F.3d at 378.

Finally, as to Martin Marietta's argument that it merely furnished a "condition" leading to Good River's injuries, its understanding does not comport with that of the Texas Supreme Court. To be clear, the parties do not dispute but-for causation. The Texas Supreme Court uses the word "condition" to describe scenarios with "but-for" causation *without* proximate causation. *See Allways Auto Grp., Ltd. v. Walters*, 530 S.W.3d 147, 149 (Tex. 2017) (holding that loaning a friend a car was a "condition" that did not create liability for an accident 18 days later); *Union Pump Co. v. Allbritton*, 898 S.W.2d 773 (Tex. 1995), *abrogated by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007) (holding that a fire was a "condition" when, hours after it was extinguished, a person slipped and fell trying to close a valve on the site of the fire). Here, the conduct was not so attenuated—the flooding flowed rapidly from Martin Marietta's property, over the Colorado River, and onto Good River's property. Accordingly, Martin Marietta did

not merely create a condition leading to injury and the jury's verdict on negligence should be affirmed.

## IV

Although this case presents a close call, the jury verdict demands our deference. Because sufficient evidence supports its conclusions that Martin Marietta violated Texas Water Code § 11.086 and committed common law negligence, we AFFIRM.