## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2018

Lyle W. Cayce
Clerk

No. 17-60458

————

WANDA WILLIAMS, individually and as Conservator for John Robert
Williams, Jr., incapacitated,

        Plaintiff–Appellee,

v.

MANITOWOC CRANES, L.L.C.,

        Defendant–Appellant.

————

Appeal from the United States District Court
for the Southern District of Mississippi

————

Before JOLLY, SOUTHWICK, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:

A crane accident in Mississippi left John Williams Jr. physically and mentally incapacitated. Wanda Williams, his wife, sued the crane manufacturer, Manitowoc Cranes, under Mississippi's products liability statute. Following a lengthy trial, a jury found that Manitowoc failed to warn Model 16000 Series crane operators that, if the crane tips over, large weights stacked on the rear of the crane can slide forward and strike the operator's cab.

We AFFIRM.

## I. BACKGROUND

### A.     The Accident

John Williams Jr. worked as a certified crane operator at VT Halter Marine shipyard in Pascagoula, Mississippi. John typically operated a

No. 17-60458

Manitowoc Model 16000 Series crawler crane.[1] Crawler cranes are so-named because they crawl along tracks in order to move. They can typically lift hundreds of tons of weight. The Model 16000 has a counterweight tray on its rear; the tray holds a stack of large, steel counterweights. Each counterweight is roughly seven-feet wide, eight-feet long, nine-and-a-half-inches tall, and weighs 18,000 pounds.

On June 25, 2014, John participated in a "tandem lift," which involved multiple cranes moving a bow section of a ship. As usual, John operated a Manitowoc Model 16000. Three total cranes participated at the start of the lift. As planned, the lift caused the bow to rotate. Soon after, one crane disconnected from the load, as planned.

Two cranes remained. John operated one, and David Smith operated the other. The two remaining cranes continued the lift by moving the bow unit forward toward the hull of the ship under construction. But, unexpectedly, the cranes began to separate from one another. Smith's crane pulled John's crane forward, causing the tracks on John's crane to rise up. John, however, stayed in the operator's cab in a last-ditch attempt to control the load.

As John's crane tipped, the nine-ton counterweights stacked in the rear of the crane began to rain down. At least one slid forward, striking the operator cab. The collision propelled John from the cab to the ground—an eight-foot, head-first fall onto concrete.

John survived. But his physical and mental capacities were permanently impaired.

---

[1] A diagram of the crane is available in the Appendix.

No. 17-60458

## B.     The Preceding Proceedings

In the wake of the accident, Wanda Williams sued Manitowoc.[2] Focusing on the crane's counterweight system, she raised failure-to-warn, defective-design, and negligence claims under the Mississippi Products Liability Act.[3] She also brought a loss-of-consortium claim.

In September 2016, the district court granted partial summary judgment for Manitowoc and dismissed Williams's design-defect claims with prejudice. The defective-warning and loss-of-consortium claims proceeded to a jury trial, which took place the next month.

On October 17, after Williams presented her case-in-chief, Manitowoc moved orally for judgment as a matter of law. Manitowoc claimed Williams failed to prove her failure-to-warn claim as a matter of law; that is, she did not show that the warnings were inadequate or that any inadequacy proximately caused John's injuries. The district court denied the motion.

The trial continued. Days later, the jury ruled for Williams, finding that Manitowoc failed to warn John about the falling counterweights.[4] The jury awarded $7 million in economic damages and $1 million in non-economic damages. It also awarded $500,000 for the loss-of-consortium claim. But the jury found that negligence contributed to the injuries, so it apportioned fault as follows: 50% to VT Halter, 40% to Manitowoc, and 10% to John. So the district court entered a final judgment against Manitowoc for $2.8 million in actual economic damages and $600,000 in non-economic damages—resulting in a total judgment of $3.4 million plus post-judgment interest.

---

[2] Williams filed individually and as John's Conservator.

[3] MISS. CODE ANN. § 11-1-63.

[4] The jury found for Manitowoc with regard to Williams's claim that the Model 16000 lacked adequate warnings about how to safely perform tandem lifts.

No. 17-60458

Nearly a month later, Manitowoc filed a renewed motion for judgment as a matter of law, or, in the alternative, motion for a new trial. Manitowoc asserted that it deserved judgment as a matter of law because Williams failed to prove her failure-to-warn claim. Manitowoc claimed that (1) it adequately warned about causing a tip-over, (2) John's misuse of the crane caused the tip-over, and (3) the proposed additional warning would not have prevented John's injuries. Manitowoc also asserted, in the alternative, that it deserved a new trial because the district court improperly qualified Dr. William Singhose as an expert, and the court erred in admitting evidence regarding prior accidents involving other Manitowoc cranes and in excluding evidence about John's character. The district court denied Manitowoc's motions, and Manitowoc timely appealed.

## II. STANDARDS OF REVIEW

### A.     Judgment as a Matter of Law

"We review de novo the district court's denial of a motion for judgment as a matter of law, applying the same standards as the district court."[5] Judgment as a matter of law is proper if "a party has been fully heard on an issue during a jury trial and . . . a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[6]

"We review all the evidence in the record in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party; we do not make credibility determinations or weigh the evidence."[7] Also, our court "cannot reverse a denial of a motion for judgment as a matter of law unless the jury's factual findings are not supported by

---

[5] *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013) (citing *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 392–93 (5th Cir. 2012)).

[6] FED R. CIV. P. 50(a).

[7] *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 395 (5th Cir. 2013) (citing *Poliner v. Tex. Health Sys.*, 537 F.3d 368, 376 (5th Cir. 2008)).

substantial evidence, or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings."[8] In other words, the party moving for judgment as a matter of law can prevail only "if the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not have arrived at a contrary verdict."[9] Although our review is de novo, "[a]fter a jury trial, [the] standard of review is especially deferential."[10]

## B.    Motion for a New Trial

We review the denial of a motion for a new trial for an abuse of discretion.[11] "The district court abuses its discretion by denying a new trial only when there is an absolute absence of evidence to support the jury's verdict."[12] "If the evidence is legally sufficient, we must find that the district court did not abuse its discretion in denying a motion for new trial."[13]

## C.    Expert Testimony

"Whether an individual is qualified to testify as an expert is a question of law."[14] "However, we review the admission or exclusion of expert testimony for an abuse of discretion,"[15] and we afford the trial court "[w]ide latitude" in

---

[8] *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016) (quoting *Am. Home Assurance Co. v. United Space All., LLC*, 378 F.3d 482, 488 (5th Cir. 2004)).

[9] *Homoki*, 717 F.3d at 395 (citing *Poliner*, 537 F.3d at 376).

[10] *Abraham*, 708 F.3d at 620 (second alteration in original) (quoting *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012)).

[11] *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016).

[12] *OneBeacon Ins.*, 841 F.3d at 676 (cleaned up).

[13] *Id.* (citations omitted). It is more difficult to satisfy the standard for reversing the denial of a motion for a new trial than the standard for reversing the denial of judgment as a matter of law. *See Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 & n.2 (5th Cir. 1998).

[14] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citing *Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002)).

[15] *Id.* (citation omitted).

its determination.[16] Given the district court's "broad discretion in deciding" whether to admit expert testimony, this court "will not find error unless the ruling is *manifestly erroneous*."[17] "Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law."[18]

## D.    Evidentiary Rulings

This court applies a "deferential abuse of discretion standard" when reviewing a district court's evidentiary rulings.[19] "A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[20] "The harmless error doctrine applies to the review of evidentiary rulings, so even if a district court has abused its discretion, [this court] will not reverse unless the error affected 'the substantial rights of the parties.'"[21] "The party asserting the error has the burden of proving that the error was prejudicial."[22]

## III. DISCUSSION

## A.    The Failure-to-Warn Claim

The Mississippi Products Liability Act (MPLA) codifies a failure-to-warn cause of action.[23] To prevail, the plaintiff must prove by a preponderance of the evidence that when the product left the manufacturer's control:

---

[16] *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012).

[17] *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (citations omitted).

[18] *Id.* (cleaned up).

[19] *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 233 (5th Cir. 2016); *see Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) ("In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings.").

[20] *Heinsohn*, 832 F.3d at 233 (quoting *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010)).

[21] *Id.* (quoting *Nunez*, 604 F.3d at 844); *see* FED. R. EVID. 103.

[22] *Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015) (citations omitted).

[23] *See* MISS. CODE ANN. § 11-1-63(a)(i)–(iii) (2014). We are sitting in diversity, so we apply Mississippi's substantive law. *See Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999).

No. 17-60458

1. the product "failed to contain adequate warnings or instructions" about a dangerous condition that the manufacturer knew or reasonably should have known about;

2. "the ordinary user or consumer would not realize [the] dangerous condition";

3. the inadequate warning "rendered the product unreasonably dangerous to the user or consumer"; and

4. the inadequate warning "proximately caused the damages for which recovery is sought."[24]

Manitowoc claims Williams failed to prove her failure-to-warn claim as a matter of law, thus the district court should have granted Manitowoc judgment as a matter of law. On appeal, Manitowoc trains its sights on two components[25] of Williams's failure-to-warn claim: (1) the existing warning's adequacy; and (2) whether the allegedly inadequate warning proximately caused John's injuries.

### 1. Adequacy

Under Mississippi law,

An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product.[26]

"In Mississippi, a warning may be held adequate as a matter of law where the adverse effect was one that the manufacturer specifically warned against."[27]

---

[24] *Id.* § 11-1-63(a), (c); *see Johnson & Johnson, Inc. v. Fortenberry*, 234 So. 3d 381, 390 (Miss. 2017), *reh'g denied* (Feb. 1, 2018); *Union Carbide Corp. v. Nix, Jr.*, 142 So. 3d 374, 385 (Miss. 2014).

[25] Manitowoc concedes that it knew about the hazards of falling counterweights and that ordinary users would not have realized the dangerous condition.

[26] MISS. CODE ANN. § 11-1-63(c)(ii).

[27] *Austin v. Will-Burt Co.*, 361 F.3d 862, 868 (5th Cir. 2004) (citation omitted).

No. 17-60458

But there is no bright-line rule for whether a warning is adequate.[28] Typically, the jury resolves this fact question.[29]

The (in)adequacy dispute here centers on whether Manitowoc needed to warn operators about the *specific* hazard that counterweights could fall during a tip-over.

Manitowoc asserts that warning about the general hazards of tipping over (severe injury or death, for example)—combined with instructions about how to avoid a tip-over—is adequate. In other words: no tip-over, no sliding counterweights, no problems.[30] Separately, Manitowoc argues that its warnings were adequate as a matter of law because they "complied with all federally mandated OSHA requirements and industry standards." If we agree with either of Manitowoc's arguments, then the district court erred by failing to grant judgment as a matter of law.[31]

Williams sees things differently. Manitowoc never warned operators that unsecured counterweights could slide forward during a tip-over, striking the cab and potentially injuring the operator. Manitowoc knew about this risk yet said nothing. And multiple crane operators testified during trial that they were unaware of the falling counterweight risk. Thus, Williams contends, the warning was inadequate.

---

[28] *See Hankins v. Ford Motor Co.*, No. 3:08-CV-639-CWR-FKB, 2011 WL 6291947, at *5 (S.D. Miss. Dec. 15, 2011).

[29] *See Fortenberry*, 234 So. 3d at 391.

[30] Manitowoc asserts it adequately warned operators about the risks of using the Model 16000. The Model 16000 Operator's Manual warns that unsafe operation "can result in . . . death or injury." The Manual describes various hazards that could result from unsafe operation, including tipping over. And the Manual outlined the potential consequences of tipping over; thus, the operators knew "a tip-over could result in serious injury or death." Also, Manitowoc warned operators about what may cause a tip-over—for example, by overloading the crane or operating the crane on a slope.

[31] *See* FED. R. CIV. P. 50(a); *Homoki*, 717 F.3d at 395.

No. 17-60458

We hold that Manitowoc was not entitled to judgment as a matter of law on the failure-to-warn claim. The jury had an adequate basis for finding Manitowoc's warning inadequate—that is, for finding that a reasonably prudent person would have informed crane operators about the unique danger posed by falling counterweights.[32]

We are guided in part by our court's decision in *Austin v. Will-Burt Company*.[33] There, we found a warning adequate where "the adverse effect was one that the manufacturer specifically warned against."[34] Accordingly, we affirmed summary judgment in favor of a telescoping mast manufacturer[35] in a failure-to-warn case because the manufacturer adequately warned about the hazards of raising the mast near electrical power lines.[36]

Manitowoc, however, failed to warn about the specific "adverse effect" of a counterweight falling, crushing the operator cab, and ejecting the operator from the cab. The Model 16000 Operator's Manual provided no guidance about precautions for avoiding the falling counterweight hazard. Instead, it discussed only in broad terms the harms that could result from a tip-over.

We cannot conclude as a matter of law that Manitowoc adequately warned crane operators about the falling counterweight danger. Typically, the jury is responsible for evaluating a warning's adequacy.[37] Here, the jury had a

---

[32] *See* MISS. CODE ANN. § 11-1-63(c)(ii).

[33] 361 F.3d 862 (5th Cir. 2004).

[34] *See id.* at 868. This does not mean, however, that a warning must identify *all* known hazards in order to be deemed adequate. Under Mississippi law, juries engage in a fact-intensive analysis of a warning's adequacy. *See* MISS. CODE ANN. § 11-1-63(c)(ii)

[35] The telescoping mast, designed for mounting on top of a news van, helped to facilitate news broadcasts. The mast was constructed of aluminum tubes "nestled inside each other that could be extended by air pressure." *Id.* at 864. On the day of the accident, "[w]hen the mast was raised, it became entangled with the power lines, sending 8,000 volts through the mast and electrifying the van and its appurtenances. When [the decedent] touched the van, he received a fatal electric shock." *Id.*

[36] *See id.* at 868–69.

[37] *See Fortenberry*, 234 So. 3d at 391.

sufficient evidentiary basis for finding Manitowoc's warning inadequate.[38] Manitowoc knew that counterweights could fall during a tip-over but failed to mention it in the Manual. Also, crane operators were apparently unaware of the falling counterweight hazard. Plus, the jury could have found Manitowoc's purported compliance with industry standards insufficient to render the warning adequate.[39] We are unwilling to supplant the jury's conclusion about the warning's adequacy with our own—especially when we are so far removed from the witnesses and evidence.[40]

### 2. Proximate Cause

Manitowoc contends that any failure to warn did not proximately cause William's injuries, so Williams's claim fails as a matter of law.[41]

The MPLA does not define proximate cause. The Mississippi Supreme Court, however, has filled in the statutory gaps.[42] The plaintiff must show the failure to warn was the "cause in fact" and the "legal cause" of the injuries.[43] To be the "cause in fact," the plaintiff must show that "but for the defendant's

---

[38] *See* FED. R. CIV. P. 50(a); *OneBeacon Ins.*, 841 F.3d at 676.

[39] *See Will-Burt,* 361 F.3d at 868. Manitowoc cites no record evidence detailing the practices of other crane manufacturers, nor does it cite evidence about industry standards. This may be because, as Williams's expert Dr. William Singhose testified, "this falling counterweight phenomena is relatively new in cranes, so . . . it has [not] made its way through the government process yet." Also, the MPLA does not say that complying with industry standards renders a warning adequate as a matter of law; the statute says that an adequate warning "is one that a reasonably prudent person" would provide about the dangers and safe uses of the product. *See* MISS. CODE ANN. § 11-1-63(c)(ii). Compliance, therefore, is one piece of evidence for the jury to consider, but it is not dispositive in a failure-to-warn claim. *Union Carbide Corp.*, 142 So. 3d at 387. ("[C]ompliance with OSHA standards may be used as evidence of the reasonableness of [the defendant's] actions, but it is not dispositive.").

[40] *See OneBeacon Ins.*, 841 F.3d at 676 (quoting *Am. Home Assurance Co.*, 378 F.3d at 488); *Homoki*, 717 F.3d at 395.

[41] *See 3M Co. v. Johnson*, 895 So. 2d 151, 166 (Miss. 2005) ("[T]he failure to warn must be the proximate cause of the injuries suffered or it is irrelevant.").

[42] *See, e.g.*, *Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (Miss. 2007); *3M Co.*, 895 So. 2d at 166.

[43] *See Berry v. E-Z Trench Mfg., Inc.,* 772 F.Supp.2d 757, 759–60 (S.D. Miss. 2011).

negligence, the injury would not have occurred."[44] To be the "legal cause," the plaintiff's damages must have been a reasonably foreseeable result of the failure to warn.[45] Generally, the jury decides the proximate cause component of a products liability case.[46]

As part of the proximate cause inquiry, the Mississippi Supreme Court requires plaintiffs to prove that an alternative warning would have conveyed the information necessary for the victim to avoid the accident.[47]

Manitowoc raises two points for why its alleged failure to warn did not proximately cause John's injuries: (a) John's misuse of the crane caused the injuries, and (b) no alternative warning would have helped John avoid the counterweights.

### a. Misuse

Courts seek "to apportion fairly the costs of the harm arising out of the use of a product."[48] Thus, in products liability cases misuse is a defense[49] that "will bar recovery when a jury finds the plaintiff's *unforeseeable misuse* of the product substantially changed the condition of the product, and that change, and not the alleged defect, is the proximate cause of the alleged injury."[50]

---

[44] *Id.* at 760 (quoting *Glover*, 968 So. 2d at 1277).

[45] *Id.*

[46] *See Whittley v. City of Meridian*, 530 So. 2d 1341, 1348 (Miss. 1988); *see also Mine Safety Appliance Co. v. Holmes*, 171 So. 3d 442, 456 (Miss. 2015) (finding that the "misuse" inquiry, which bears on proximate cause, is "generally" a jury question).

[47] *See 3M Co.*, 895 So. 2d at 166; *Windham v. Wyeth Labs., Inc.*, 786 F. Supp. 607, 612 (S.D. Miss. 1992) ("[I]f a further warning would not have altered [the physician's] conduct, then any failure to warn would not be the proximate cause of [the plaintiff's] injuries.").

[48] *Mine Safety*, 171 So. 3d at 454.

[49] *Id.* (observing that if the "plaintiff's injuries resulted from product misuse . . . then the plaintiff is the proximate cause of the injuries and the manufacturer is not liable").

[50] *Id.* (citations omitted) (emphasis added). The plaintiff in *Mine Safety* raised both failure-to-warn and design-defect claims. The court in *Mine Safety* performed the misuse analysis *only* in the context of the design-defect claim—not the failure-to-warn claim. *See id.* at 452–57. Nevertheless, Williams apparently accepts that misuse is a defense to a failure-to-warn claim.

Generally, the jury is responsible for determining "whether misuse of a product caused the plaintiff's injury."[51]

Manitowoc believes John misused the crane in three ways:

1.  the crane was overloaded;[52]
2.  he operated the crane on a slope;[53] and
3.  the crane's operational aid was not working.[54]

Absent misuse, Manitowoc argues, the crane would not have tipped over, and the counterweight would not have struck the cab. According to Manitowoc, holding it accountable for John's misuse would undercut Mississippi's products liability laws, which seek to fairly apportion responsibility between manufacturers and consumers.

Manitowoc cites *Mine Safety Appliance Company v. Holmes*[55] to support its argument. In *Mine Safety*, the plaintiff sued a respirator manufacturer, alleging design and failure-to-warn defects. The Mississippi Supreme Court held the manufacturer was entitled to judgment as a matter of law because "the evidence regarding misuse and the altered condition of the product was of such quality and weight that no reasonable and fair-minded juror could have" blamed the manufacturer for the plaintiff's injuries.[56] There, the plaintiff

---

[51] *Id.* at 456.

[52] John allegedly overloaded the crane, which Manitowoc warned against in the Operator's Manual. According to testimony offered at trial, the crane tips over only when the load exceeds 133% of the crane's load chart.

[53] Manitowoc alleges that John's crane was operating on a 2% slope—which contravened the Manual's clear instructions to avoid operation on a slope greater than 1%.

[54] John failed to ensure that his digital operational aids—devices that help operators avoid tip-overs—were functioning correctly before the lift. Indeed, according to testimony elicited during trial, John's "RCI/RCL capacity warning system" was not working on the day of the tip-over, and the device had been malfunctioning for the five months preceding the accident. Manitowoc contends that it advised operators to immediately repair malfunctioning warning systems.

[55] 171 So. 3d 442 (Miss. 2015).

[56] *Id.* at 457–58 (citations omitted).

"unequivocally testified" that during the six years he used the product,[57] "he never changed the filter in his respirator"[58]—even though the respirator came with replacement filters and with instructions to replace the filter when the wearer "noticed resistance when breathing through the respirator."[59] To the Mississippi Supreme Court, the plaintiff misused the product to the point where it was "not in the same condition as when it left [the manufacturer's] control."[60] Manitowoc believes John's similar "unequivocal violations of the manufacturer's instructions" entitles it to judgment as a matter of law.

Williams, in response, implores this court to preserve the jury's fact-finding role. The jury heard the competing testimony about misuse, evaluated the credibility of the witnesses, received instruction on the failure-to-warn cause of action, and then rendered a verdict. Namely, during cross-examination, one of Manitowoc's experts admitted that John was not responsible for the tip-over.[61] Also, the jury received instruction on the misuse issue.[62] Accordingly, Williams believes that the jury considered John's alleged misuse when deciding how to apportion fault for the accident.[63]

Williams also refutes each specific misuse allegation. First, she asserts that the crane was not overloaded six minutes prior to the tip-over.[64] Also, the

---

[57] *Id.* at 454.

[58] *Id.* at 456.

[59] *Id.* at 455.

[60] *Id.* at 456.

[61] Q: Sir, my question is, is it your testimony to this jury that this tip-over was Johnny Williams' fault; yes or no?
   [Mike Parnell]: No. No, it wasn't.

[62] Manitowoc does not challenge the instruction on appeal.

[63] The jury disagreed with Manitowoc's arguments that misuse should bar recovery, the jury apparently found that John was, to an extent, contributorily negligent. Manitowoc does not argue that finding any misuse absolutely bars recovery.

[64] Manitowoc disputes the relevance of this timeframe, arguing that John's crane became overloaded when the cranes separated.

load on John's crane would have affected the other crane involved in tandem lift—but that crane's (functioning) computer did not signal it was overloaded.

Second, the tip-over did not occur while the crane was moving along a slope. An eyewitness testified that John's crane was stationary at the time of the accident. And Manitowoc's expert admitted that it was "very close to the case" that John's crane was stationary at the time of the tip-over.

Third, using the crane with a malfunctioning operator aid—and neglecting to repair the aid before the incident—does not constitute misuse. Manitowoc's own witness admitted during cross-examination that the Manual says it is "100 percent acceptable to operate the crane without the computer and without that operator aid."

Generally, the jury should answer the misuse question.[65] Our role is to decide whether the jury had a sufficient evidentiary basis to find for Williams. We view the record evidence in the light most favorable to her, drawing reasonable inferences in her favor and remaining agnostic about the credibility and weight of the evidence.[66] Nothing demonstrates "the facts and inferences point so strongly and overwhelmingly" in Manitowoc's favor that "reasonable jurors could not have arrived at a contrary verdict."[67]

Contrary to Manitowoc's suggestion, this situation is a far cry from *Mine Safety*. There, the plaintiff conceded that he misused the product. Here, Williams rebutted the misuse arguments by citing testimony and record evidence that the jury heard before reaching a verdict. And, on top of that, this record evidence supports finding that Manitowoc could reasonably foresee John's alleged misuse.

---

[65] *See Mine Safety*, 171 So. 3d at 456.

[66] *See Homoki*, 717 F.3d at 395.

[67] *See id.*

14

No. 17-60458

Manitowoc's misuse allegations do not convince us that John's alleged misuse proximately caused his injuries. This means the district court did not err in denying Manitowoc's motion for judgment as a matter of law on this point.

### b. Alternative Warning

The Mississippi Supreme Court, interpreting the MPLA's proximate cause element for failure-to-warn claims, requires plaintiffs to "demonstrate that some other warning would have given them additional information that they did not already know and that they would have acted upon that new information in a manner that would have avoided the injuries."[68]

---

[68] *3M Co.*, 895 So. 2d at 166. There is a distinction between *absent* warning and *inadequate* warning cases. Plaintiffs alleging that a warning was entirely absent are not required to prove that they saw and heeded the warnings that were present because "it would be absurd to require a plaintiff to show reliance on a warning where no warnings were given." *Mine Safety*, 171 So. 3d at 452. Plaintiffs alleging that a warning was present but inadequate must prove that they "read and relied upon the defective warning to complain of it." *Id.* (quoting *Union Carbide Corp.*, 142 So. 3d at 390). This is an inadequate warning case: Williams criticizes the existing warnings as inadequate because they failed to warn of the specific falling counterweight hazard.

No. 17-60458

During trial, Williams displayed the "Singhose warning" as a potential alternative warning:



So we ask:

1.    Does the warning provide operators new information?

2.    Does that additional information instruct crane operators to act differently, such that they would avoid injury?

Manitowoc answers each question in the negative. Manitowoc's primary objection is that the warning does not tell operators how to *avoid* falling counterweights—even if it apprises them of the counterweight danger. Because the warning is silent on how operators can safely escape the cab (and avoid the counterweight danger), operators are left to "jump and run." This is dangerous: A fleeing operator could be struck by a falling counterweight, or the operator may injure himself while exiting the cab. Given the shortcomings of the Singhose warning, operators may be safer remaining in the cab during a tip-over. Also, according to Manitowoc, John's failure to follow the Manual's warnings about safe crane operation demonstrates he likely would not have followed the Singhose warning, anyway.[69] Thus, according to Manitowoc,

---

[69] *See* Part III(A)(2)(a) for the misuse discussion.

John's injuries were not proximately caused by problems with its own warning.[70]

According to Williams, however, the Singhose warning communicates the specific danger that counterweights could fall during a tip-over, giving operators unique, valuable, and potentially life-saving information. Responding to Manitowoc's derisive "jump and run" commentary, Williams claims the warning "alerts the operator the counterweights will strike (and crush) the rear of the cab." So instead of remaining in the cab when the crane starts to tip, any crane operator with "common sense" would swiftly exit. Harold Abbott, a crane operator at VT Halter, testified that had he seen the warning, he would know that he should flee the cab as quickly as possible during a tip-over. Here, it took over three minutes for the crane to topple, which likely would have given John adequate time to leave the cab, walk down the catwalk, and descend the crane's stairs. Williams concludes her argument on this point by emphasizing that the jury saw the warning and heard the accompanying testimony, so we should respect the jury's conclusion on the proximate cause element.[71]

We conclude the jury had an adequate basis for finding that an alternative warning could have communicated valuable additional information about the falling counterweight danger, allowing John to avoid injury. Thus, the district court correctly ruled on the motion for judgment as a matter of law.[72]

Williams bore the burden of persuading the jury that an alternative warning would have given John "additional information that [he] did not already know" and that he "would have acted upon that new information in a

---

[70] *See 3M Co.*, 895 So. 2d at 166; *Windham*, 786 F. Supp. at 612.

[71] We note that there was no specific jury instruction discussing the Singhose warning.

[72] *See* FED. R. CIV. P. 50(a); *Homoki*, 717 F.3d at 395.

manner that would have avoided the injuries."[73] We review the evidence in the light most favorable to Williams, drawing all reasonable inferences in her favor—while avoiding credibility determinations and evidence weighing.[74] We cannot reverse the district court's decision to deny the motion for judgment as a matter of law unless "the facts and inferences point so strongly and overwhelmingly in favor of [Manitowoc] that reasonable jurors could not have arrived at a contrary verdict."[75]

Many questions surround an alternative warning's efficacy. Where would it have been placed? Would operators have noticed it? Did it adequately advise operators how to avoid the falling counterweight hazard? And there is, of course, speculation involved in predicting whether John would have followed the warning and safely exited the operator's cab.

We must trust, however, that the jury considered these issues in evaluating whether an alternative warning would have reduced the likelihood of John severely injuring himself during the tip-over.[76] Based on the testimony of other crane operators and Dr. Singhose, the jury could have inferred that an alternative warning would have prompted John to exit the operator's cab during a tip-over. In other words, given the potentially severe harm of remaining in the cab, the jury could have predicted that—had he known of the falling-counterweight danger—John would have followed his "common sense" and swiftly exited before a counterweight struck the cab. Our reservations

---

[73] *See 3M Co.*, 895 So. 2d at 166.

[74] *Homoki*, 717 F.3d at 395.

[75] *See id.*

[76] Generally, the proximate cause inquiry in a products liability case is reserved for the jury. *See Whittley*, 530 So. 2d at 1348.

about the warning notwithstanding, we are unwilling to hold *as a matter of law* that an alternative warning would have been ineffective.[77]

## B.     The District Court Did Not Abuse Its Discretion.

### 1. Qualifying Dr. Singhose as a Warnings Expert

Williams proffered Dr. William Singhose as an expert in mechanical engineering, human factors, and warnings. Manitowoc claims the district court abused its discretion by finding Dr. Singhose qualified to testify as a warnings expert.

"Whether an individual is qualified to testify as an expert is a question of law."[78] Our court "review[s] the admission or exclusion of expert testimony for an abuse of discretion."[79] We afford the trial court "[w]ide latitude" in deciding the admissibility of expert testimony.[80] Given the district court's "broad discretion," we "will not find error unless the ruling is manifestly erroneous."[81] "Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law."[82]

---

[77] When a plaintiff claims that a warning is inadequate, the plaintiff must show reliance on the actual warning to establish proximate cause. That is because "[i]nadequate warnings cannot serve as the proximate cause of injuries where adequate warnings would have resulted in the same injuries." *Palmer v. Volkswagen of Am., Inc.*, 904 So. 2d 1077, 1094 (Miss. 2005); *see also Mine Safety*, 171 So. 3d at 453 (finding an alternative warning insufficient as a matter of law because "there was no evidence whatsoever this [alternative warning] would have changed [the plaintiff's] behavior" because the plaintiff failed to show that he would have read the alternative warning); *3M Co.*, 895 So. 2d at 166 (finding the inadequate warning did not proximately cause the plaintiffs' injuries and reversing the district court's refusal to enter a judgment notwithstanding the verdict because "[n]o plaintiff testified that they ever read any warnings . . . placed on [the defendant's] products," so no alternative warning could have been adequate).

[78] *Huss*, 571 F.3d at 452 (citing *Mathis*, 302 F.3d at 459).

[79] *Id.*

[80] *Roman*, 691 F.3d at 692.

[81] *Guy*, 394 F.3d at 325 (citations omitted) (emphasis removed).

[82] *Id.* (cleaned up).

No. 17-60458

Rule 702 controls the admissibility of Dr. Singhose's testimony.[83] "Experts qualified by 'knowledge, skill, experience, training or education' may present opinion testimony to the jury."[84] An expert may testify as long as:

a. the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b. the testimony is based on sufficient facts or data;

c. the testimony is the product of reliable principles and methods; and

d. the expert has reliably applied the principles and methods to the facts of the case.[85]

The district court has "broad latitude in weighing the reliability of expert testimony for admissibility."[86] The district court performs a "gate-keeping function: the court must ensure the expert uses reliable methods to reach his opinions; and those opinions must be relevant to the facts of the case."[87] Crucially, however, the district court "does *not* judge the expert conclusions themselves."[88]

"Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue."[89] Although an expert's qualifications may be less-than-sterling, she may still be certified. This is because "[d]ifferences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[90] The Supreme Court in *Daubert* emphasized the

---

[83] *See Roman*, 691 F.3d at 692 ("Before certifying an expert and admitting his testimony, a district court must ensure that the requirements of Federal Rule of Evidence 702 have been met." (citing *Mathis*, 302 F.3d at 459)).

[84] *Huss*, 571 F.3d at 452 (quoting FED. R. EVID. 702).

[85] FED. R. EVID. 702.

[86] *Guy*, 394 F.3d at 325 (citations omitted).

[87] *Id.*

[88] *Id.*

[89] *Huss*, 571 F.3d at 452.

[90] *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)).

"capabilities of the jury and of the adversary system generally"[91] as the appropriate antidotes to "absurd and irrational pseudoscientific assertions."[92] Chiefly, the "conventional devices" of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[93]

Manitowoc claims Dr. Singhose lacks the credentials necessary to be a warnings expert. First, his curriculum vitae lacks any references to or discussion of "the word 'warning.'" Second, he does not sit on the American National Standards Institute Z535 committee, which develops standards for designing warnings (e.g., selecting colors and symbols). Third, Dr. Singhose has experience with drafting warnings for particular components of cranes and small-scale cranes—but not crawler-crane warnings.

Williams defends Dr. Singhose by reciting his formal qualifications: He has worked as a full-time, tenured professor of mechanical engineering at Georgia Tech for the past eighteen years. Before that, he received an undergraduate degree in mechanical engineering from MIT, a Master's degree in mechanical engineering from Stanford University, and a Ph.D. in mechanical engineering from MIT. According to Williams, Dr. Singhose also has extensive practical experience.[94]

---

[91] *Daubert*, 509 U.S. at 596.

[92] *Id.* at 595.

[93] *Id.* at 596.

[94] Dr. Singhose has: (1) researched and taught courses related to human–factors analysis—that is, analyzing human–machine interactions; (2) published articles on hazard analysis; (3) lectured about hazard analysis, risk assessment, and safe operation of machines; (4) "worked with and researched cranes and crane controls for the past twenty years"; (5) designed small-scale cranes and drafted safety warnings for components of those cranes; and (6) researched warnings, generally, and read crane warnings, specifically, throughout his career.

No. 17-60458

Williams then invokes our decision in *Roman v. Western Manufacturing.* There, the district court permitted two experts—one with a Ph.D. in mechanical engineering and the other with a Ph.D. in material science—to testify regarding a stucco pump's design.[95] The appellant challenged the district court's decision to qualify those individuals as experts, arguing that the two so-called experts could "not testify about a stucco pump because stucco is not their trade."[96] We concluded that "[t]he district court was within its *wide discretion* to conclude that these offered witnesses had the qualifications to state a reliable opinion on the subjects for which they were certified."[97] We firmly rejected the appellant's "conception of expertise" in which the experts "could not testify about a stucco pump because stucco is not their trade."[98] Such conception of expertise, we reasoned, "could make expert certification decisions a battle of labels—label the needed expertise narrowly and the offered expert's field broadly."[99] This would elevate labels over substance.

Williams also cites our decision in *Huss v. Gayden* for the proposition that "the *Daubert* standards are flexible, and the most important question is not whether one party's expert is more qualified than the other's, but rather, whether an expert's testimony is reliable."[100] The *Huss* court found there were "sufficient indicia" that a doctor "would provide a reliable opinion," so the district court abused its discretion by prohibiting the doctor from testifying about an area related to his primary realm of expertise.[101]

---

[95] *Roman*, 691 F.3d at 692. A "stucco pump" is a mechanical device used for applying stucco, a coating typically used to cover exterior walls.

[96] *Id.* at 693.

[97] *Id.* (emphasis added).

[98] *Id.*

[99] *Id.* (citing *Huss*, 571 F.3d at 455–56).

[100] 571 F.3d at 455.

[101] *Id.* at 455–56.

22

No. 17-60458

We conclude that the district court did not abuse its discretion to qualify Dr. Singhose as a warnings expert. The district court has wide latitude when navigating the expert-qualification process.[102] And we will reverse only "manifestly erroneous" determinations.[103]

Here, the district court's decision was not "manifestly erroneous"; sufficient evidence supports its ruling. Dr. Singhose is an experienced mechanical engineering professor who has conducted research and taught courses relating to hazard analysis and human–machine interactions. He has worked with cranes and crane controls for the past two decades. He has also designed small-scale cranes and drafted accompanying safety warnings. Over his lengthy career, he has researched and read warnings about many types of cranes. And he understands industry standards for warnings.

Manitowoc cites no Fifth Circuit case where we held that a district court abused its discretion by qualifying someone as an expert on the basis of an imprecise match between the expert's qualifications and the issue she planned to testify about. Manitowoc's conception of expertise could turn the expert-qualification process into a "battle of labels" where expertise is defined so narrowly that qualified experts are irrationally excluded from testifying.[104] The absurdity of this approach is apparent here: Manitowoc seeks to exclude a mechanical engineer with a background in warnings and small-crane design from testifying as an expert about warnings for a crawler crane. We decline to adopt this approach. As long as there are "sufficient indicia" that an individual will "provide a reliable opinion" on a subject, a district court may qualify that individual as an expert.[105]

---

[102] *See Roman*, 691 F.3d at 692; *Huss*, 571 F.3d at 452.

[103] *See Guy*, 394, F.3d at 325 (citations omitted) (emphasis removed).

[104] *See id.* at 693.

[105] *See Huss*, 571 F.3d at 455–56.

Manitowoc's quibbles about qualifications are better characterized as arguments about the *weight* of Dr. Singhose's testimony—not about its admissibility.[106] But this battle should be fought with the conventional weapons of cross-examination and competing testimony—not the nuclear option of exclusion.[107] Thus, the district court did not manifestly err by qualifying Dr. Singhose as a warnings expert.

### 2. Admitting Evidence of 18000 Model Series Crane Accidents

Manitowoc claims the district court improperly admitted evidence of Manitowoc 18000 Model Series crane accidents and compounded the error by constraining Manitowoc's ability to challenge this evidence.

"We afford the district court broad discretion in its evidentiary rulings on relevance,"[108] so we review the court's rulings for an abuse of discretion.[109] "A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[110] Manitowoc also bears the burden of proving that the district court's error affected it substantial rights.[111]

We have previously advised district courts that "[w]hen evidence of other accidents or occurrences is offered for any purpose other than to show notice, the proponent of that evidence must show that the facts and circumstances of the other accidents or occurrences are 'closely similar' to the facts and

---

[106] *See Huss*, 571 F.3d at 452.

[107] *See Daubert*, 509 U.S. at 596.

[108] *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 809 (5th Cir.) (citing *United States v. Young*, 655 F.2d 624, 626 (5th Cir. 1981)).

[109] *See Heinsohn*, 832 F.3d at 233.

[110] *Id.* (quoting *Nunez*, 604 F.3d at 844).

[111] S*ee id.*; *Ball*, 792 F.3d at 591.

circumstances at issue."[112] And "even when it is offered solely to show notice, the proponent of such evidence must establish reasonable similarity."[113]

Manitowoc asserts that the district court erred in admitting evidence about two accidents involving a different type of crane: the Manitowoc Model 18000 Series. To Manitowoc, the Model 18000 cranes and the circumstances surrounding these accidents differ meaningfully from the crane and accident in this case. For one, the Model 18000's counterweight tray is designed differently. Second, the accidents are dissimilar. Namely, "the counterweights on the Model 18000 accidents did not hit the cab[,] and the individuals who stayed in the cab during those accidents were uninjured." These accidents, says Manitowoc, are not relevant to Williams's theory of the case, which focuses on the danger of the counterweight hitting the cab and the corresponding injury to the operator.

Manitowoc summarily asserts these rulings amount to manifest, prejudicial error.

Williams raises both procedural and substantive responses to Manitowoc's position. Procedurally, Williams asserts Manitowoc waived these evidentiary objections because it failed to raise them during trial.

Assuming that Manitowoc did not waive the objections, the district court did not err by admitting evidence about the Model 18000 crane accidents.[114] Those accidents involved similar circumstances and a similarly designed crane. Both models were equipped with identical counterweights that were similarly positioned, and both accidents involved unsecured counterweights falling toward the cab during a tip-over. As the district court recognized, admitting evidence regarding the prior accidents was relevant to determining

---

[112] *Johnson v. Ford Motor Co.*, 988 F.2d 573, 579 (5th Cir. 1993) (citations omitted).
[113] *Id.* at 580.
[114] *See Heinsohn*, 832 F.3d at 233.

what Manitowoc "knew, or in light of reasonably available information should have known, about the alleged danger" that Williams asserts caused the injuries. This is central to a failure-to-warn claim. Also, as the district court acknowledged, the degree of similarity between the models (and the circumstances surrounding the accidents) speaks to the *weight* of the evidence—not the admissibility.

Even if the district court had abused its discretion, Manitowoc failed to carry its burden of proving that the court's error was prejudicial. The jury heard evidence about a 2009 crane collapse involving a Model 16000 crane. The crane in that collapse was equipped with similarly configured unsecured counterweights. The 2009 collapse also involved a tip-over where "one or more of the unsecured counterweights fell toward the crane cab, striking the rear of the cab"—the same thing that happened here. This alone supports Williams's position that Manitowoc failed to warn operators about the falling-counterweight risk, despite knowing about it. So any error regarding the admission of the Model 18000 Series accidents was harmless: The similar Model 16000 accident provided the jury sufficient evidence to find Manitowoc liable for its failure to warn about the falling counterweights.[115]

### 3. *Excluding Evidence about Specific Instances of John's Prior Conduct*

Manitowoc asserts that the district court abused its discretion by denying Manitowoc the opportunity to introduce evidence about specific instances of John's prior conduct.

Williams put John's character as a crane operator at issue during the direct examination of her witness, Willie Horne. Mr. Horne described John as a "by-the-book" operator. During cross-examination, Manitowoc asked whether

---

[115] *See Heinsohn*, 832 F.3d at 233.

No. 17-60458

Mr. Horne knew that John had regularly overloaded his crane in the months leading to the accident. Mr. Horne said "No."[116]

Manitowoc was not satisfied with that response. Later, during a direct examination, the company sought to elicit additional testimony about John's prior conduct. Specifically, Manitowoc wanted its witness to authenticate evidence relevant to John's "by-the-book" personality. Williams objected, and the district court sustained the objection.

Manitowoc thinks the district court abused its discretion. And Manitowoc believes it has Federal Rule of Evidence 405(a) on its side. The Rule states:

> When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. *On cross-examination of the character witness*, the court may allow an inquiry into relevant specific instances of the person's conduct.[117]

Under the plain language of Rule 405(a), the district court *may* allow Manitowoc to cross-examine Mr. Horne about specific instances of John's character as a by-the-book operator. Indeed, the district court permitted this line of questioning. Rule 405(a) does not, however, mandate that the trial court allow a party to use direct examination of one of its own witnesses to elicit specific character evidence about an opposing party. Thus, the district court did not abuse its discretion in sustaining the objection to Manitowoc's attempt to elicit character evidence about John during the direct examination of one of the company's own witnesses.

More important, Manitowoc did not demonstrate any prejudicial impact of the district court's alleged error. Manitowoc presented evidence that John's crane was overloaded at the time of the accident and that he misused the crane

---

[116] Williams admits she opened the door to that line of questioning.
[117] FED. R. EVID. 405(a) (emphasis added).

## No. 17-60458

in other ways.[118] This evidence also speaks to John's character as a crane operator. Yet, the jury still concluded in John's favor.

### CONCLUSION

We AFFIRM the district court in full.

---

[118] See *supra* Part III(A)(2)(a) for discussion of Manitowoc's argument about "misuse."

No. 17-60458

**APPENDIX**

**The Manitowoc Model 16000 Crane**

This diagram is adapted from the Operator's Manual. To aid comprehension, we added color to the components relevant to this appeal: counterweights and the operator's cab.



This is a different view from the Manual. Again, we added color to one counterweight and to the operator's cab.



29