# United States Court of Appeals
# for the Fifth Circuit

————————

No. 23-30704
Summary Calendar

————————

United States Court of Appeals
Fifth Circuit

**FILED**

May 28, 2024

Lyle W. Cayce
Clerk

Golden K. Berry,

*Plaintiff—Appellant*,

*versus*

Sheriff's Office Ouachita Parish; Sheriff Jay Russell;
Chief Deputy Marc Mashaw; Colonel James Purvis;
Scott Smith,

*Defendants—Appellees*.

————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:18-CV-1397

————————————————————

Before Davis, Willett, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellant, Golden K. Berry, asserted claims against Defendants-Appellees, the Ouachita Parish Sheriff's Office ("OPSO") and several of its employees, for racial discrimination and retaliation under Title VII. In his first appeal to this Court, we affirmed the district court's

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

summary judgment dismissing his racial discrimination claim, but reversed and remanded his retaliation claim. Specifically, we determined that there was a genuine issue of material fact as to whether OPSO's purported reason for terminating Berry was pretextual. After remand, a jury rendered a verdict in favor of Defendants-Appellees. Berry appeals a second time, arguing that the district court abused its discretion in denying his Rule 59(a) motion for new trial and in admitting certain evidence at trial. For the reasons stated below, we AFFIRM the district court's judgment.

## I.

In October 2000, Berry, who is African American, was hired by the OPSO as a deputy and assigned to the Ouachita Parish Correctional Center as a correctional officer. In February 2003, he was promoted to the rank of corporal, a position he held for thirteen years. In August 2016, Berry transferred to the Transitional Work Release Center. After transferring, he was demoted in rank, and his pay was decreased. In November 2017, Berry filed a racial discrimination complaint with the Equal Employment Opportunity Commission ("EEOC"), contending that Caucasian employees of the OPSO were allowed to transfer while maintaining their rank and pay. Defendants learned of Berry's EEOC complaint sometime in February 2018.

Also in January or February 2018, Berry qualified to run for the city council of Winnsboro, Louisiana. He did not inform anyone in his chain of command at the OPSO of his run for office. Berry went on to win the election on March 24, 2018. Berry's superiors at the OPSO learned of his election to the city council from the television news or through the newspaper.

Four days after the election, the OPSO terminated Berry's employment because he could not be a deputy with the OPSO and a councilman at the same time. His separation paper stated that he was terminated for violating Louisiana law, i.e., Louisiana's prohibition on dual

2

officeholding.  After his termination, Berry filed another complaint with the EEOC, asserting that he was terminated unlawfully as retaliation for prior EEOC complaint.  After receiving right-to-sue letters from the EEOC, Berry filed the instant action.

As stated above, this Court previously affirmed the district court's summary judgment in favor of Defendants as to Berry's racial discrimination claim, but we reversed the district court's summary judgment as to his retaliation claim.[1]  After remand, a jury rendered judgment in favor of Defendants.[2]  Thereafter, Berry filed a Rule 59(a) motion for new trial.  The district court denied the motion, and Berry filed a timely notice of appeal.

## II.

This Court "review[s] the denial of a motion for a new trial for an abuse of discretion."[3]  A district court abuses its discretion when denying a motion for new trial "only when there is an absolute absence of evidence to support the jury's verdict."[4]  In Berry's first appeal, we determined that Berry established a *prima facie* case of retaliation and that Defendants produced a legitimate, nondiscrminatory reason for terminating his employment.  We further determined that Berry demonstrated that there was a genuine issue of material fact as to the last element of his retaliation claim— that the OPSO's proffered reason was pretext for unlawful retaliation.[5]  As

---

[1] *See Berry v. Sheriff's Off. Ouachita Par.*, 834 F. App'x 843 (per curiam) (unpublished).

[2] This verdict was rendered after a second trial of Berry's retaliation claim.  Berry's first trial after remand ended in a mistrial because the jury was unable to reach a verdict.

[3] *Williams v. Manitowoc Cranes, L.L.C.*, 898 F3d 607, 614 (5th Cir. 2018) (citation omitted).

[4] *Id.* (citation omitted).

[5] *Berry*, 834 F. App'x at 848-49.

properly reflected in the jury interrogatories, this element required Berry to establish at trial that he "would not have been terminated but for his filing a charge of discrimination with the [EEOC]."[6]

## A.

Berry argues that he should be granted a new trial because the jury's verdict was against the great weight of the evidence. We disagree. As the district court reasoned, and as set forth below, both sides presented evidence that the jury could have believed.

Bryan Boney, the Director of the Work Release Center, testified that when he received notice of Berry's EEOC complaint, he was unaware that it involved racial discrimination. He also did not know that Berry was running for city council and "was shocked" when he saw on television that Berry had been elected. He thought it "might not be legal" for Berry to be an OPSO employee and councilman at the same time. He called Defendant Colonel James Purvis, who handled all personnel issues at the OPSO, to inform him about Berry's election to the council.

Purvis testified that before he terminated Berry, he consulted with the OPSO's attorneys who told him that it would be a violation of the dual officeholding prohibition for Berry to be a councilman and a sheriff's deputy. Purvis testified that Berry's policy violations were all "one occurrence." Specifically, he stated that Berry "did not seek permission" to run for office, "did not take a leave of absence" after qualifying, and that he could not hold both positions under Louisiana law. Purvis viewed all of these things as "one occurrence." He believed Berry was "completely deceitful."

_____

[6] *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019) ("Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred.") (citations omitted).

Defendant Captain Marc Mashaw heard that an employee had run for office and actually won. Mashaw also believed that Berry was being "deceitful" by running for office and not informing anyone at the OPSO, not asking for permission, and not taking a leave of absence. Mashaw testified that Berry's belief that his prior EEOC complaint was the reason for his termination could not be farther from the truth. Mashaw testified that they "had never had anyone run for office secretly and win at the sheriff's office in [his] 34 years." He believed Berry was terminated because he had run for office without telling anyone at the OPSO.

Defendant Sheriff Jay Russell also testified that Purvis was in charge of personnel issues and that Purvis terminated Berry because he was in violation of the dual officeholding prohibition. Russell also testified that Berry did not advise the OPSO he was running for office. He believed Berry was terminated for "violating the policy, campaigning, not telling us he was running in another parish for an office that he was going to dual hold." Russell further stated: "Had [Berry] come to us, he'd still be there today." Russell also testified that Berry's EEOC complaint had "nothing to do" with his termination. He stated that other OPSO employees running for office had come to him and informed him they were running, and that is what distinguished Berry. Russell thought it was "very deceitful" for Berry to run for office and not tell anyone with the OPSO.

On cross-examination of the above witnesses, Berry's counsel elicited testimony that Berry was not actually in violation of the dual officeholding law at the time he was terminated, but had to be sworn in to violate the law. Berry himself testified that he thus believed the reason for his termination was a "lie" because he had not yet been sworn in as councilman and did not take the oath of office until June 28, 2018. Berry thought the real reason he was terminated was because he filed an EEOC complaint. He pointed out that the OPSO "shifted firing reasons," at first stating erroneously that he

violated the dual officeholding prohibition and then asserting he violated various OPSO policies because they knew the original reason "would not hold up." He testified that he did not "sneakily" try to run for office; that he did not know he was supposed to get permission or tell anyone because it was public knowledge that he was running; and that he "didn't feel he had to request permission." He was "shocked" when Purvis told him he was being terminated.

As the district court determined, the jury clearly found the Defendants' testimony and evidence more compelling. In the end, the jury's assessment of the evidence, including its credibility determinations, favored Defendants. "[W]e cannot say that the jury's verdict is against the great weight of the evidence or that a reasonable person could only have reached an opposite decision."[7] We conclude that the district court did not abuse its discretion in denying Berry's Rule 59(a) motion for new trial.

## B.

Berry also protests a number of the district court's evidentiary rulings. He argues that certain evidence was admitted in violation of Federal Rules of Evidence 401 and 403, because it was irrelevant, highly prejudicial, confusing, and misleading. This Court "review[s] the district court's evidentiary rulings for abuse of discretion."[8] "[T]o vacate a judgment based on an error in an evidentiary ruling, [we] must find that the substantial rights of parties were affected."[9]

---

[7] *Wantou v. Wal-Mart Stores, Tex., L.L.C.*, 23 F.4th 422, 437 (5th Cir. 2022).

[8] *Id.* at 432 (citation omitted).

[9] *Id.* (citation omitted).

The evidence Berry objects to includes: his EEOC complaint against his prior employer (Sicily Island), a letter from the Mayor of Sicily Island regarding his prior employment, his OPSO employment application, his bankruptcy petition, an OPSO 2005 write-up, and the payroll and attendance records of Gary Gilley.

The Sicily Island evidence was first admitted because defense counsel asked Berry about his prior employment, which was relevant to the damages Berry sought. As questioning progressed, the EEOC complaint and letter regarding Berry's Sicily Island employment were used for impeachment purposes. Reviewing the trial transcript, we agree with the district court that this evidence was relevant and properly used for impeachment purposes as it touched on Berry's credibility.

We note Berry did not object at trial to the admission of the OPSO employment application or the 2005 write-up, and we find no error, plain or otherwise, in the admission of this evidence.[10] We further agree that Berry's bankruptcy petition was relevant to Berry's claim for lost wages and his credibility.[11]

Finally, although it appears Defendants did not produce the payroll and attendance records of Gary Gilley to Berry until after the first trial of this matter, we nonetheless conclude that the district court did not abuse its discretion in admitting this evidence. The records were relevant to the

_____

[10] "[I]n the absence of a proper objection, we review only for plain error." *United States v. Johnson*, 85 F.4th 316, 320 (5th Cir. 2023).

[11] Berry argues that an affidavit submitted by one of the jurors stating that the "old EEOC complaint and bankruptcy papers negatively affected the case and took away from the focus which was retaliation" shows that this evidence confused or misled the jury. We disagree. Rather, the evidence was used for impeachment purposes and (it appears) negatively affected Berry's credibility.

OPSO's stance that other employees who had run for office were required to take a leave of absence after qualifying. Berry's argument that the records were prejudicial because they did not show that Gilley actually took a leave of absence goes to the weight of the evidence the jury should have given the evidence, not to its admissibility.

In sum, considering the record and the parties' submissions, we are not convinced that any of the district court's evidentiary rulings constitute an abuse of discretion. Nor do we find that these rulings adversely affected Berry's substantial rights.[12]

Based on the foregoing, the district court's judgment is AFFIRMED.

---

[12] *See Wantou*, 23 F.4th at 441.