# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 12, 2020

Lyle W. Cayce
Clerk

No. 19-60849

Blaine McGill,

*Plaintiff—Appellant*,

*versus*

BP Exploration & Production, Incorporated; BP America Production Company,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:18-CV-159

Before King, Stewart, and Southwick, *Circuit Judges*.

Per Curiam:*

Plaintiff-Appellant Blaine McGill brought suit against Defendants-Appellees BP Exploration & Production, Inc. and BP America Production Company ("BP") in this case involving the Deepwater Horizon oil spill. The

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-60849

district court granted summary judgment in favor of BP. For the following reasons, we AFFIRM.

## I. Facts & Procedural History

After the *Deepwater Horizon* oil spill in 2010, BP created a program to clean up the Gulf of Mexico. This program involved deploying workers in boats to use dispersants to break up the spilled oil. McGill was a clean-up worker who alleges he was exposed to oil, dispersants, and decontaminants while working from May 12, 2010 to July 30, 2010. BP and McGill later entered into a settlement entitled the Medical Settlement Agreement ("MSA"), which compensates those affected by the spill and clean-up efforts. The MSA provides a "Back-End Litigation Option" ("BELO") for those alleging "Later–Manifested Physical Conditions" ("LMPCs") resulting from their exposure to oil, dispersants, and other substances associated with the spill. On January 4, 2018, McGill filed a BELO lawsuit in the Eastern District of Louisiana alleging serious LMPCs caused by exposure to oil, Corexit EC9500A and Corexit EC9527A dispersants, and other harmful chemicals. McGill states that he is completely disabled. This suit was later transferred to the Southern District of Mississippi. On April 23, 2018, the district court dismissed McGill's claims related to some of his alleged conditions but allowed him to proceed on his claims for seven LMPCs: pneumonia, rhabdomyolysis, chronic obstructive pulmonary disease exacerbation, synobronchial syndrome, acute respiratory failure, status asthmaticus, and folliculitis. McGill designated Dr. Steven Stogner, a pulmonologist, as an expert in his case.

On August 1, 2019, BP moved to exclude Dr. Stogner's opinion. The same day, BP also moved for summary judgment. The district court granted both motions. The district court excluded the opinion of Dr. Stogner, the only expert who spoke to causation, under *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93 (1993). The district court noted that, per the MSA, the parties were permitted to litigate whether the LMPCs were legally caused by this exposure. The court recognized that both the parties agreed that the MSA was governed by general maritime law. The court also agreed with BP that toxic tort law applied to McGill's cause of action as well. The district court concluded that without admissible expert testimony regarding causation, McGill could not establish that his exposure caused his injuries, and thus BP was entitled to summary judgment. McGill now appeals, arguing that (1) the district court erroneously excluded Dr. Stogner's expert opinion, and (2) the district court erred in applying a toxic tort causation standard and in granting summary judgment because McGill failed to meet that standard.

## II. Standard of Review

"Whether an individual is qualified to testify as an expert is a question of law." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614–15 (5th Cir. 2018) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)). We review the district court's admission or exclusion of proffered expert testimony for abuse of discretion. *Id.* The district court has broad discretion in determining whether to admit expert testimony, and thus on appeal we will sustain the ruling unless it is "manifestly erroneous." *Id.* (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)). "Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Id.* (quoting *Guy,* 394 F.3d at 325).

We review a grant or denial of summary judgment de novo, using the same standard used by the district court. *See Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* FED. R.

CIV. P. 56(a). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

## III. DISCUSSION

McGill first argues that the district court improperly excluded the expert opinion of Dr. Stogner. He contests the district court's determination that Dr. Stogner lacked critical knowledge regarding the level of oil or Corexit harmful to humans and the extent of McGill's exposure. He further objects to the district court's determination that Dr. Stogner assumed McGill's illnesses were caused by exposure because of the proximity in time between his injuries and the exposure. He maintains that Dr. Stogner's methodology is sound and that his conclusions are based on sufficient evidence. We agree with the district court's conclusion that Dr. Stogner's opinion is unreliable and inadmissible.

For an expert to testify in the form of an opinion, the testimony must be based on "sufficient facts or data" and must be the product of "reliable principles and methods." FED. R. EVID. 702(b)–(c). The expert must also have "reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702(d). The district court is charged with making "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. For testimony to be reliable, it must be based on "scientific . . . knowledge," grounded in scientific methods, and not mere speculation or subjective belief. *Id.* at 590; *see also Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) ("[T]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and

conclusions are based on the scientific method, and, therefore, are reliable.").

Here, Dr. Stogner's opinion is not based on sufficient facts, nor is it the product of a reliable methodology. Although some of the studies Dr. Stogner relied on are consistent with the notion that Corexit and crude oil could cause respiratory harm, all have defects in their applicability. None support the conclusion that Corexit or crude oil cause the illnesses that McGill suffers from, and none provide conclusive findings on what exposure level of Corexit is hazardous to humans.[1] Some of the studies are irrelevant, such as a study pertaining to individuals who were exposed to gases and fumes during the World Trade Center collapse.

Dr. Stogner's conclusions do not appear to be the product of reliable principles, and there is a notable analytical gap between the facts he relies on and the conclusions he reaches. Dr. Stogner's deposition fails to address other potential causes of McGill's illness and the method by which he rules them out. Dr. Stogner fails to analyze the conditions of exposure McGill may have experienced. Per the MSA, the level and duration of exposure may be litigated. Dr. Stogner was unable to answer questions regarding how much time McGill spent scooping up oil, how, where, or in what quantity Corexit was used, how exposure levels would change once substances were diluted in seawater, or how McGill's protective equipment would affect exposure.

McGill argues that a more detailed analysis of his exposure is unnecessary, and cites two Fifth Circuit toxic tort cases in support of his position: *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661 (5th Cir. 1999), and

---

[1] Dr. Stogner relied on two studies showing that oil and Corexit caused damage when applied to cells, but those studies did not address what level of exposure would be unsafe for humans or what specific illnesses that exposure may cause.

*Clark v. Kellogg Brown & Root, L.L.C.*, 414 Fed. App'x 623 (5th Cir. 2011) (unpublished). In both cases, the proffered experts used considerably stronger causation evidence and more rigorous analytical methods. While the experts were not required to determine the precise level of exposure in either case, both experts engaged in analysis of the plaintiff's workspace to determine a probable exposure level. In the present case, the record is void of any showing that Dr. Stogner analyzed McGill's probable exposure level.

We have upheld the exclusion of expert testimony in several cases that are more factually similar to McGill's than to *Curtis* or *Clark*. For example, in *Allen v. Pennsylvania Engineering Corp.*, we affirmed the exclusion of expert testimony on causation because of its unreliability, its lack of evidence of a link between the chemical and the precise illness, and because there was no evidence of the level of exposure. 102 F.3d 194, 195 (5th Cir. 1996). Later, in *Moore v. Ashland Chemical Inc.*, we upheld the exclusion of an expert who based his causation opinion on an MSDS sheet showing that exposure can injure the lungs, a temporal connection, and a "speculative" study. 151 F.3d at 271–72, 277–278. In *Knight v. Kirby Inland Marine Inc.*, we affirmed the exclusion of a highly qualified expert who relied on over fifty studies for his conclusion that benzene caused the plaintiffs' cancers, which were all excluded by the district court for reasons such as failing to isolate benzene as a cause of cancer and statistically insignificant results. 482 F. 3d 347, 350 (5th Cir. 2007). Given the district court's legitimate concerns regarding Dr. Stogner's research and methodology, we hold that the court did not abuse its discretion in excluding his opinion.

Finally, McGill argues that the district court improperly applied a toxic tort standard in granting summary judgment, which requires "scientific knowledge of the harmful level of exposure to a chemical, plus knowledge that the plaintiff was exposed to such quantities[.]" *Allen v. Pa. Eng'g Corp.*, 102 F.3d at 199. He argues that because the MSA is governed by general

maritime law, we should apply a different causation standard. We hold that the district court's grant of summary judgment was proper because McGill has failed to offer the evidence necessary to prove legal causation per the MSA under any plausible causation standard. [2] He does not put forward any non-speculative evidence that Corexit and oil exposure cause the types of illnesses he suffers from. Since there is no genuine question of material fact and BP is entitled to judgment as a matter of law, the district court did not err in granting summary judgment. *See Brown*, 337 F.3d at 540–541.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's summary judgment in favor of BP.

---

[2] We do not decide whether the toxic tort standard or another causation standard applies to BELO litigation because such a determination is unnecessary in light of McGill's inability to meet any plausible causation standard.